# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TAREQ I.J. ABUFAYAD,
                    *Petitioner,*

v.

ERIC H. HOLDER Jr., Attorney
General,
                    *Respondent.*

No. 09-70136

Agency No.
A055-372-964

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 1, 2010—San Francisco, California

Filed February 16, 2011
Amended March 25, 2011

Before: Ronald M. Gould, Sandra S. Ikuta, Circuit Judges,
and James C. Mahan, District Judge.*

Opinion by Judge Gould

*The Honorable James C. Mahan, United States District Judge for the District of Nevada, sitting by designation.

4005

## COUNSEL

Love Macione Suh, Oakland, California, for the petitioner.

Tony West, Assistant Attorney General, Department of Justice, Civil Division, Washington, D.C., Ethan B. Kanter and Daniel I. Smulow, Office of Immigration Litigation, Department of Justice, Washington, D.C., for the respondent.

## ORDER

The opinion filed on February 16, 2011 and published at 632 F.3d 623 (9th Cir. 2011), is AMENDED as follows: the

sentence appearing *id.* at 625 that states "Contact information on the defunct Islamic Association for Palestine, a designated terrorist organization, was found in Abufayad's luggage." is deleted in its entirety.

Parties may file any petitions for panel rehearing or for rehearing en banc on the opinion as amended.

**IT IS SO ORDERED.**

---

## OPINION

GOULD, Circuit Judge:

Tareq I.J. Abufayad, a native of Saudi Arabia and citizen of Palestine, petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ") determination that he is removable, pursuant to 8 U.S.C. § 1182(a)(3)(B)(i)(II), for being likely to engage in terrorist activity after entering the United States. He also seeks review of the BIA's determination that he does not qualify for a grant of protection under the Convention Against Torture ("CAT") based on his fear of being mistreated upon returning to Palestine as a consequence of being removed on terrorism-related grounds. Because we conclude that substantial evidence supports the BIA's conclusions, we deny the petition.

## I

A Palestinian born in Saudi Arabia, Tareq I.J. Abufayad lived in Gaza from age six to about age nineteen, when he left to attend university in the West Bank and, later, Egypt. His father and five siblings are U.S. residents or permanent citizens, and Abufayad obtained an IR-2 immigrant visa to move from Egypt to the United States with his father's sponsorship

in January of 2007. On February 17, 2007, when attempting to enter the United States at San Francisco International Airport, a Customs and Border Protection agent randomly approached Abufayad. Alerted by Abufayad's "confrontational" attitude, he took Abufayad to a secondary examination area, where agents inspected Abufayad's luggage, as well as his laptop computer and external hard drive (collectively "computer"). Opening Abufayad's computer and examining its contents, materials that they described as "anti-American" came to their attention. This in turn led to more extensive interviewing and Abufayad's detention.

Upon seizing Abufayad's computer, Immigration and Customs Enforcement ("ICE") conducted a detailed forensic search of its contents at headquarters. An investigation of Abufayad's hard drive, conducted by Rita Katz, led to her conclusion that, "[w]hile the majority of the data stored on this hard drive is not considered jihadist, the hard drive nonetheless also contains a significant amount of jihadist material," including "jihadist videos, audio clips, songs, pictures, rhetoric, training manuals, and justifications of violence." Katz's report noted that the material was "consistent with the jihadist material found on jihadist websites and shared within the global jihadist community." The computer also contained hacking programs and stolen credit card numbers.

For several days thereafter, Abufayad was interviewed by, inter alia, Agent Gregory Mandoli, a Department of Homeland Security ("DHS") Special Agent assigned to the ICE National Security Unit and detailed to the Federal Bureau of Investigation's ("FBI") Joint Terrorism Task Force. Abufayad's inconsistent statements did not alleviate concern. After first saying that he did not remember having jihadist materials on his computer, and later saying that he had them for potential use in a future school project, Abufayad told Agent Mandoli that he had downloaded the files out of curiosity about current events and often forgot that he had such files after saving them. When Agent Mandoli asked Abufayad

about Hamas founder Sheikh Yassin, some of whose writings were found on Abufayad's computer, Abufayad responded that he respected him as a religious figure but did not agree with his politics.

Abufayad was also questioned about his background and potential affiliations with Hamas. Abufayad said that, while growing up in Gaza, he attended a local mosque whose main imam was Younis al-Astal, a childhood friend of his father who later became a fundamentalist member of the Hamas government. Until about age fifteen, Abufayad occasionally donated small amounts to the mosque's charity donation box, which he characterized as going to Hamas social programs. Abufayad also said that he had two cousins who were Hamas members—one had conducted a suicide attack in Gaza during the Second Intifada in 2001, and the other was living in Yemen. Abufayad also discussed having briefly shared an apartment with four Hamas members when he first arrived at Bir Zeit University in the West Bank. He said he was approached to join Hamas at least twice but that he did not join and was not involved in Hamas activities.

The Government charged Abufayad as removable on the basis that there were reasonable grounds to believe that he was likely to engage after entry in terrorist activity, pursuant to 8 U.S.C. § 1182(a)(3)(B)(i)(II), and for having engaged in terrorist activity by affording material support to a terrorist organization, pursuant to 8 U.S.C. § 1182(a)(3)(B)(i)(I).

## A

Both the Government and Abufayad presented substantial documentary and testimonial evidence at Abufayad's hearing before the IJ. Agent Mandoli testified about the computer's content and his interviews of Abufayad. The Government also presented FBI Special Agent Robert Miranda as an expert witness. Agent Miranda testified that—based on his review of videotapes of Abufayad's interviews with ICE, a disk of

materials found on Abufayad's computer, and Katz's report—there were reasonable grounds to believe that Abufayad was likely to engage in terrorist activity in the United States. Given Abufayad's "connections and his past activities as well as . . . his interest in matters relating to Jihad," Miranda believed that Abufayad "would afford material support to individuals connected to terrorist groups if given the opportunity." Agent Miranda stated that his suspicions regarding Abufayad were cumulative, as Abufayad had "significant elements [that] would have made him an exceptionally attractive target for recruitment." Because Hamas sought recruits among the college-educated class, Agent Miranda thought that the organization Hamas "would definitely seek [Abufayad's] talents," which included a university background in computer science. A green card would increase Abufayad's desirability as a recruitment target.

Agent Miranda further testified that, based on his knowledge of the organizational structure and operational security of Hamas, he did not believe Abufayad's claim that he had lived with Hamas members at Bir Zeit University but had no Hamas affiliations. After speaking with a Hamas expert in the Israeli Security Agency, Agent Miranda had concluded that it was unlikely that Hamas members would permit an outsider who "doesn't share their opinions" into their inner cell. According to the Israeli expert, it was a "common excuse" among captured Hamas members to say that Hamas was merely trying to recruit them.

Abufayad testified at length about the contents of his computer, his alleged connections to Hamas, and his religious and political beliefs. He stated that, if admitted as a lawful U.S. permanent resident, he intended to live with his family and continue his studies. He reiterated that he had downloaded the jihadist materials found on his computer out of interest in current events, including several events that had occurred in the vicinity of his hometown in Gaza, and said that he had never looked at many downloaded items. He testified that he was

not and had never been a member of Hamas or any other organization advocating the use of violence. He denied receiving any training or support from any such groups or giving donations to any organization advocating violence. He said that he had occasionally dropped a few shekels for the needy in the mosque's collection box, which was not nominally affiliated with Hamas or any other group. Abufayad disavowed any approval of or close relationship with his cousins who were members of Hamas.

Abufayad also testified about his Hamas-affiliated roommates at Bir Zeit University. He stated that the Student's Board assigned him housing and that his assigned roommates turned out to be pro-Hamas. Abufayad testified that he had told Agent Mandoli that the roommates' "political view was with Hamas," not that they were Hamas members. Their Hamas-related activities were limited to university activities such as organizing talks and lectures, and their Hamas-related conversations were confined to politics. The roommates did not try to recruit Abufayad into Hamas's military wing and were indifferent when Abufayad declined to help them in their pro-Hamas political activities. Abufayad stayed with them for two to three months before moving in with other students.

**B**

Following the hearing, the IJ found Abufayad inadmissible on the basis that there were reasonable grounds to believe that Abufayad was likely to engage in terrorist activity upon his entry to the United States.[1] The IJ stated that the "reasonable

---

[1]The IJ also found Abufayad inadmissible based on a determination that Abufayad's small contributions to Hamas's charitable endeavors as a child constituted material support to a terrorist organization, in light of the lack of any *de minimis* exception. This finding is not properly before us, because the BIA did not review it and it is not raised on appeal, so we do not address that ground for the IJ's decision.

ground to believe" standard is "akin to the probable cause standard" and is "satisfied when there is sufficient information for a reasonable person to believe the standard is met." The IJ observed that the charge of inadmissibility was premised on future conduct, namely the possibility that "[Abufayad] would utilize his computer expertise in support of Hamas' terrorist activities." The IJ stated that Abufayad was an attractive target for recruitment but that the statute required more: evidence of "*likelihood* to engage after entry in any terrorist activity. This is especially true since respondent has no past history of terrorist activities and DHS concede[d] that respondent is not a terrorist." Unable to find legal authority defining the term "likely to engage," as used in the statute, the IJ looked to the Merriam-Webster Dictionary, which defines "likely" as "in all probability; probably," and distinguished it from a simple possibility.

The IJ determined that Abufayad's possession of jihadist materials on his computer "demonstrated his interest and bias" in terrorism and provided some evidence of Abufayad's disposition. Stating that denial alone is insufficient to establish that an alien is clearly and beyond doubt not inadmissible, the IJ held that "[m]ere possession of highly inflammatory, pro-terrorist information along with the factors identified by Agent Miranda would provide reasonable grounds to believe that respondent is likely to engage in terrorist activity." The IJ described the case as "admittedly . . . close" but found the evidence sufficient to support a charge of removal under the relatively low burden imposed by the probable cause standard of proof.

## C

Abufayad then submitted an application for deferral of removal pursuant to the CAT, arguing that DHS's investigation into his background and his detention in relation to terrorism charges would subject him to torture upon his return to the Palestinian territories. He claimed that the immigration

proceedings, which had "officially . . . labeled [him] a Hamas supporter and an individual likely to engage in terrorism," caused him to fear returning to Palestine because he would face a cumulative probability of torture by the Israeli security forces and the Palestinian Authority ("PA") that exceeded fifty percent.

In support of his application, Abufayad submitted documentary evidence about the use of torture in the region to elicit information from suspected terrorists. Abufayad also called an expert on country conditions in Israel and Palestine, who testified that "while it is impossible to say for sure what can happen in any individual case, between the risk to Mr. Abu Fayad [sic] from both the Israeli government and the Palestinian Authority one can assume that he does face a greater than 51% risk of being detained by one or both authority and interrogated using methods that contravene international law." In rebuttal, the Government's expert stated that there was a fifty-one percent likelihood that Abufayad could be safely returned to Gaza and that the probability of encountering mistreatment in the West Bank, if returned there, was slim.

The IJ granted Abufayad's request for CAT protection and deferral of removal from Palestine. The IJ determined that Agent Miranda's consultation with an Israeli security official had made Israeli authorities aware of Abufayad, that any attempt by Abufayad to enter Gaza would lead to his detention, and that it was " 'more likely than not' that respondent would be detained by Israeli security forces and interrogated by the use of torture or other cruel and inhumane treatment." The IJ also concluded that the PA would "take an active interest" in Abufayad "for similar reasons that DHS sought respondent's removal as a potential Hamas terrorist." The PA would be aware of his return pursuant to U.S. deportation procedures, it was reasonable to conclude that the PA would want to question him, and individuals in the PA's custody suspected of having Hamas affiliations face a high probability of torture during interrogation. As a result, the IJ deemed it

"highly probable" that Abufayad would face "detention and interrogation by use of torture as a suspected Hamas supporter or terrorist."

## D

Abufayad appealed the IJ's October 12, 2007 decision finding him removable, and the Government cross-appealed the IJ's decision granting Abufayad deferral of removal from Palestine under the CAT. The BIA dismissed Abufayad's appeal and sustained the Government's appeal.

Addressing the charge of removability as "likely to engage after entry in any terrorist activity" under 8 U.S.C. § 1182(a)(3)(B)(i)(II), the BIA noted that the IJ had properly concluded that the "reasonable ground to believe" standard is akin to the "probable cause" standard and stated that the IJ had reasonably determined that the term "likely" means "probably" and is distinguishable in degree from a mere "possibility." Expressing its agreement with the IJ, it concluded that

> the voluminous number of highly inflammatory, pro-terrorist materials found in the respondent's computer and hard drive, considered along with the respondent's background and other factors cited by Agent Miranda, adequately provides the DHS with a reasonable basis upon which to believe that the respondent would likely engage in terrorist activity after entering the United States. The respondent's claim that he downloaded the numerous files on his computer simply out of curiosity . . . does not adequately prove that he is "clearly and beyond a doubt . . . not inadmissible as charged."

The BIA affirmed that the IJ had properly found Abufayad

inadmissible under 8 U.S.C. § 1182(a)(3)(B)(i)(II) and removable to Palestine.[2]

As to the IJ's decision to grant Abufayad protection under the CAT, the BIA "agree[d] with the DHS that the [IJ] engaged in speculation and relied on factual findings relating to the respondent's entitlement to protection under the CAT that are not clearly supported by the record." For example, the IJ improperly found that Israeli authorities were aware of the accusations lodged against Abufayad as a Hamas supporter and potential terrorist because "it is not evident from Agent Miranda's testimony that he provided the Hamas expert or the Israeli authorities with any information specifically identifying [Abufayad]." The IJ had also failed to cite any objective evidence that the PA would more likely than not identify Abufayad as a Hamas supporter, detain him, and torture him as a result. The BIA therefore sustained the Government's appeal and ordered Abufayad removed to Palestine.

## II

Where the BIA conducts its own review of the evidence and law rather than adopting the IJ's decision, our "review is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) (citation and internal quotation marks omitted). We review questions of law de novo. *See Hamazaspyan v. Holder*, 590 F.3d 744, 747 (9th Cir. 2009). Factual findings by the BIA, including those underlying the BIA's decision that an applicant is not eligible for CAT protection, are reviewed for substantial evidence. *See id.* at 747; *Silaya v. Mukasey*, 524 F.3d 1066, 1070 (9th Cir. 2008). "To reverse the BIA finding, we must find that the evidence not only *supports* that conclusion, but *compels* it . . . ." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

---

[2]Having so determined, the BIA declined to review the IJ's finding that Abufayad was also removable under 8 U.S.C. § 1182(a)(3)(B)(i)(I).

# III

An applicant for admission in a removal proceeding carries the burden to establish that he "is clearly and beyond a doubt entitled to be admitted and is not inadmissible under section 1182 of this title." 8 U.S.C. § 1229a(c)(2)(A). An applicant is inadmissible under 8 U.S.C. § 1182(a)(3)(B)(i)(II) if "a consular officer, the Attorney General, or the Secretary of Homeland Security knows, or has reasonable ground to believe, [that the applicant] is engaged in or is likely to engage after entry in any terrorist activity," as defined in § 1182(a)(3)(B)(iv). The "reasonable ground to believe standard" in the removal context is similar to the "probable cause" standard. *See Malakandi v. Holder*, 576 F.3d 906, 914 (9th Cir. 2009) (holding that " 'reasonable' grounds should be evaluated against a reasonable person, probable cause standard"). Where, as here, an applicant possesses a valid visa upon entry, constituting prima facie evidence of admissibility, the burden shifts to the Government to submit "some evidence" that he is not admissible under the charged grounds.[3] *Kepilino v. Gonzales*, 454 F.3d 1057, 1059-60 (9th Cir. 2006). If the Government meets its burden by introducing "reasonable, substantial, and probative evidence" of inadmissibility, *Alarcon-Serrano v. INS*, 220 F.3d 1116, 1119 (9th Cir. 2000), the applicant bears the burden of rebuttal in proving that he is "clearly and beyond a doubt . . . not inadmissible," *Kepilino*, 454 F.3d at 1060 (citation and internal quotation marks omitted).

**[1]** Stated another way, because Abufayad possessed a valid visa upon entry, for Abufayad to be found inadmissible on this ground, the government had initially to provide "some evidence" that it had "reasonable ground to believe" that Abufayad was "likely" to engage in terrorist activity after entry to the United States. This standard requires an assessment of

---

[3]This burden-shifting does not apply where an applicant for admission does not possess a valid visa upon entry.

probabilities, and not a certainty that Abufayad would engage in terrorist activity upon entry. Here, the government plainly presented "some evidence" of Abufayad's future likelihood to engage in terrorism sufficient to meet its burden, including the large quantity of jihadist materials found on Abufayad's computer, evidence of inconsistent statements by Abufayad when confronted with it, and the testimony of a terrorism expert stating that there were reasonable grounds to believe Abufayad would likely engage in terrorism given Abufayad's background and connections with Hamas.

Abufayad argues that substantial evidence does not support the BIA's finding that there are reasonable grounds to believe that he is likely to engage in terrorism. He contends that his possession of admittedly objectionable but legal materials downloaded from the internet and Agent Miranda's testimony, based on "speculation" and "twisted logic," are not sufficiently reasonable, substantial, and probative to support the BIA's conclusion. We disagree.

[2] Under our deferential standard of review, we cannot conclude that any reasonable adjudicator would be compelled to conclude that the Government did not meet its burden. *See Elias-Zacarias*, 502 U.S. at 481 n.1 (1992). Abufayad conceded Agent Miranda's expertise in the field of terrorism and did not object to his proffering his opinion on Abufayad's proclivity to engage in terrorist activity if given the opportunity. The BIA was entitled to agree with the Agent Miranda's expert opinion. Informed by his extensive counter-terrorism experience, Agent Miranda's conclusions were based on his review of DHS interviews of Abufayad, Katz's report, and a computer disk containing a portion of Abufayad's files. Agent Miranda explained that his opinion that Abufayad would likely engage in terrorist activity, if given the chance, was cumulative and based on Abufayad's background, connections, and apparent proclivities. Agent Miranda found Abufayad's connections with his hometown significant because the town is considered a Hamas stronghold. Abufayad would

be a "known entity" to Hamas because he had attended a mosque whose imam was a Hamas leader. That Abufayad had two first cousins involved in Hamas's military operations would indicate to Hamas that "his family is one to be trusted." Agent Miranda also found Abufayad's admission that he respected opinions of Hamas leaders to "speak[ ] volumes about his [political] leanings."

**[3]** Abufayad contends that the BIA's reliance on Agent Miranda's testimony was erroneous because Agent Miranda relied on inferences he drew from the evidence that are contrary to the facts as Abufayad recounts them. Abufayad stresses that the IJ made no adverse credibility determination and suggests that, therefore, Abufayad's portrayal of the facts must be accepted as true. Although our established jurisprudence in the area of asylum law mandates that "[t]estimony must be accepted as true in the absence of an explicit adverse credibility finding," *Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004), there is no general requirement that the testimony of an applicant seeking admission to the United States outside of the asylum context be regarded as true. The "deemed true" convention is justified in the asylum context in large part because of the difficulty of proving threats by persecutors, *see Ladha v. INS*, 215 F.3d 889, 899-901 (9th Cir. 2000), *overruled on other grounds by Abebe v. Mukasey*, 554 F.3d 1203, 1208 (9th Cir. 2009) (en banc). We decline to extend its application to contexts where such an adjustment to normal evidentiary burdens is not warranted. That Agent Miranda drew different conclusions from the record than those that Abufayad would have us draw does not mean that the BIA was unreasonable in crediting his opinion, nor does it compel us to conclude that substantial evidence does not support the BIA's inadmissibility finding.

**[4]** We hold that the BIA's determination that the Government met its burden of introducing "some evidence" of Abufayad's inadmissibility is supported by substantial evidence. The evidence adduced was sufficient to support a determina-

tion that Abufayad was likely to engage in terrorism by assisting in the preparation and planning of terrorist activity, *see* 8 U.S.C. § 1182(a)(3)(B)(iv)(II); gathering information on potential targets for terrorist activity, *see* 8 U.S.C. § 1182(a)(3)(B)(iv)(III); or committing an act he knows or reasonably should know will afford material support to a terrorist organization, *see* 8 U.S.C. § 1182(a)(3)(B)(iv)(VI). Once the Government met its burden, the burden then shifted to Abufayad to prove that he was "clearly and beyond doubt . . . not inadmissible." 8 U.S.C. § 1229a(c)(2)(A). A reasonable adjudicator would not be compelled to conclude, contrary to the BIA's finding, that Abufayad's various explanations for the jihadist material on his computer and claims about his religious and political beliefs met that burden. We therefore deny Abufayad's petition for review of the BIA's decision finding him removable.

## IV

**[5]** Article 3 of the CAT, implemented domestically pursuant to 8 C.F.R. § 1208.16-1208.18, prohibits states from returning anyone to a country where he or she is likely to be tortured. *See Al-Saher v. INS*, 268 F.3d 1143, 1146 (9th Cir. 2001). Applicants subject to mandatory denial of withholding may seek CAT protection in the form of deferral of removal under 8 C.F.R. 1208.17(a). *See Hosseini*, 471 F.3d at 958-59. An applicant seeking CAT protection bears the burden of establishing that "he is more likely than not to suffer intentionally-inflicted cruel and inhuman treatment," *Nuru v. Gonzales*, 404 F.3d 1207, 1221 (9th Cir. 2005) (citation and internal quotation marks omitted), "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," 8 C.F.R. § 1208.18(a)(1).

**[6]** Abufayad's claim that the outcome of his immigration proceedings have rendered him vulnerable to torture upon return to Palestine does not present an issue of first impres-

sion. In *Hosseini v. Gonzales*, we concluded that petitioner Hosseini was entitled to CAT relief because he had presented sufficient evidence showing that Iranian officials would identify him, upon his return, as being affiliated with a terrorist organization and that he would more likely than not be tortured as a consequence. 471 F.3d at 960-961. Upon removal to Iran, Hosseini would have been required to submit papers from U.S. immigration proceedings adjudicating him a strong supporter of a particular terrorist organization; and state department reports indicated that someone so identified was likely to be tortured. *Id*. *Hosseini* counsels that a petitioner asserting a CAT claim predicated on the outcome of immigration proceedings in the United States must show both that the authorities in the country of removal will know of those proceedings and that the petitioner will likely face torture as a result.

The BIA's reasoning indicates that it did not find both of these prongs adequately satisfied in this case. The BIA concluded that objective evidence in the record did not support the IJ's "assumption[s]" that Israeli authorities would know about terrorist allegations against Abufayad and that Abufayad would be perceived as possibly having information about an imminent terrorist attack, which could render him vulnerable to physical pressure. With regard to the PA, the BIA concluded that, even if the PA would want to question Abufayad on his return, the IJ did not cite objective evidence that Abufayad would more likely than not be detained, identified as a suspected Hamas supporter, and tortured by the PA.

**[7]** Substantial evidence in the record supports the BIA's determination that Abufayad is not entitled to CAT protection. Even if the Israeli authorities believe Abufayad to be a Hamas supporter as a consequence of his immigration proceedings, the record does not compel a conclusion that he faces any significant risk of torture by the Israeli government. The State Department country reports for 2006 and 2007 indicate that Israel uses "moderate physical pressure" against

detainees thought to possess information about imminent terrorist attacks. There is no evidence in the record suggesting that Abufayad would be thought to fit in this category, and the record does not indicate that Hamas sympathizers face a risk of cruel and inhuman treatment. Although the PA would be informed of Abufayad's removal pursuant to ICE reentry procedures for Palestine, there is no record evidence indicating that the PA would be told of the reasons for Abufayad's removal, or that his being identified as a potential Hamas sympathizer, as opposed to an active member of the organization, would render him vulnerable to torture. As evidence that the PA tortures not only Hamas members but also its believed sympathizers, Abufayad proffers an Amnesty International press release from October 2007, which reported that the PA had arbitrarily detained hundreds of Hamas supporters and presumed sympathizers and noted the PA's increasingly frequent use of torture and other ill-treatment. However, this evidence of detention and an increase in incidents of torture does not compel the conclusion that Abufayad has met his CAT burden, as it does not show that Abufayad would more likely than not be tortured if removed to Palestine.

[8] On the evidence here, reasonable factfinders could differ, as the experts did in this case, over whether Abufayad faces a more than fifty percent probability of torture upon return. The Government expert testified that Abufayad faced at least a fifty-one percent likelihood of safe return to Palestine. In light of the record, a reasonable factfinder would not be compelled to conclude that the BIA erred in its determination that the IJ's award of CAT protection was based on undue speculation. We deny Abufayad's petition for review of the BIA's finding that Abufayad is not entitled to CAT protection.

DENIED.