**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

Luis Gomez-Granillo,
                        *Petitioner,*

            v.

Eric H. Holder Jr., Attorney
General,
                        *Respondent.*

No. 06-70635

Agency No.
A091-815-131

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 11, 2011—Pasadena, California

Filed July 14, 2011

Before: A. Wallace Tashima and Raymond C. Fisher,
Circuit Judges, and Mark L. Wolf, District Judge.*

Opinion by Judge Wolf

---

*The Honorable Mark L. Wolf, Chief District Judge, United States District Court for the District of Massachusetts, sitting by designation.

9535

## COUNSEL

Dario Aguirre, Aguirre Law Group, Denver, Colorado; Guy Grande (argued), Aguirre Law Group, San Diego, California, for the petitioner.

John Hogan and Jennifer L. Lightbody (argued), United States Department of Justice, Washington, D.C., for the respondent.

---

**OPINION**

MARK L. WOLF, District Judge:

Petitioner Luis Gomez-Granillo petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing an appeal from an order of removal to Mexico. Despite petitioner's testimony to the contrary, an Immigration Judge ("IJ") found that petitioner was inadmissible under 8 U.S.C. § 1182(a)(2)(C) because the inspectors at the border inspection station had reason to believe that petitioner was knowingly involved in drug trafficking. The BIA dismissed the appeal because substantial evidence supported the finding that an immigration officer had the necessary "reason to believe." We grant the petition and remand for a new hearing because the IJ misunderstood the relevant legal standard.

I. FACTUAL AND PROCEDURAL BACKGROUND

At the time of the proceedings before the IJ, petitioner was a 57-year-old divorced male. He was a native and citizen of Mexico and, since December 1, 1990, a lawful permanent resident ("LPR") of the United States. He worked as a commercial truck driver.

On December 13, 2002, petitioner drove a tractor and trailer from within Mexico to the Port of Entry at Otay Mesa, California. There, his truck was inspected by an immigration officer, George Abanico, and found to contain 8,595 pounds of marijuana hidden within crates of produce. Later that day, petitioner was interviewed by Special Agent Richard Encinas.

On January 9, 2003, Inspector Tony Rodriguez took a state-

ment from petitioner. On the same day, the government issued a Notice to Appear charging petitioner as an "arriving alien" who had applied for admission and was inadmissible under § 1182(a)(2)(C) because the immigration officer knew or had reason to believe that petitioner was or had been an illicit trafficker in a controlled substance or had been a knowing assister, abettor, conspirator, or collaborator with others in the illicit trafficking in a controlled substance.[1]

At an evidentiary hearing before the IJ, petitioner testified that he had been a truck driver since 1969 and was, at the relevant time, employed by Luis Lara, who owned a business in Tijuana, Mexico. Petitioner's job was to arrive at Lara's business and pick up a loaded refrigeration trailer with a capacity of 45,000 pounds. Petitioner stated that he did not observe the loading process and performed only a brief inspection of the contents of the trailer to verify that loading was complete.

Petitioner further testified that, on the day in question, he arrived in Mexico from Los Angeles, left the empty truck at Lara's business, and then went to his sister's home in Tijuana to eat. Lara called petitioner at his sister's home to tell him the truck was ready. Petitioner then went to Lara's business, checked that the truck was completely loaded, and departed for the local customs agency and, ultimately, the United States. Petitioner testified that Lara did not tell him what was in the trailer, that he saw boxes of vegetables in the trailer, and that the manifest he received at the customs agency listed peppers and cucumbers. Petitioner testified that he did not

---

[1]Although the Notice to Appear cites the correct statutory provision, the language charging that an "immigration officer knows or has reason to believe" is drawn from a version of statute which was, as discussed below, superseded in 1999. By January 2003, the statute defined the correct question as whether "the consular officer or the Attorney General knows or has reason to believe." The BIA has read the term "Attorney General" to include the Secretary of Homeland Security. *See Matter of Casillas-Topete*, 25 I&N Dec. 317, 319-20 (BIA 2010).

know the truck contained illegal drugs until officers at the border found the marijuana.

Agents of the government also testified at the hearing. Officer Abanico described how he discovered the marijuana by inspecting the truck by x-ray and then by offloading the cargo and inserting a probe into the middle of the boxes of produce. He also testified that, while he conducted his inspection, petitioner violated port policy by speaking on a cell phone and repeatedly ignored instructions to cease doing so. Special Agent Encinas described his December 13, 2002 interview with petitioner. He perceived discrepancies in petitioner's trucking log book, as well as inconsistencies in petitioner's responses when petitioner was asked about his history of money import/export transactions. Inspector Rodriguez testified concerning his January 9, 2003 interview with petitioner. Agent Ted Lehman testified as an expert on the drug trade and opined that it would be highly unusual for such a large quantity of drugs to be entrusted to an unknowing courier.

In addition to these witnesses, both the government and petitioner submitted various exhibits, including, for example, petitioner's log book, federal regulations regarding the maintenance of such log books, and photographs of Bajas Produce in Los Angeles, a location at which petitioner stopped on December 12, 2002.

In his decision following the evidentiary hearing, the IJ stated that petitioner "makes an application for admission to the United States" and sustained the charge of inadmissibility. Citing *Matter of Rocha*, 20 I&N Dec. 944 (BIA 1995), *superseded by statute*, Intelligence Authorization Act for Fiscal Year 2000, Pub. L. No. 106-120, § 809, 113 Stat. 1606, 1632, *as recognized in Matter of Casillas-Topete*, 25 I&N Dec. 317 (BIA 2010), the IJ concluded "the 'reason to believe' is the officer's belief at the time the alien is encountered at the port of entry." The IJ "agree[d] with the Government that the totality of the circumstances indicate clear, convincing, and

unequivocal evidence that the inspectors at the border inspection station had reason to believe that the [petitioner] was consciously involved in an illicit scheme to bring into the United States a huge load of marijuana." Specifically, the IJ noted the following circumstantial evidence that petitioner knowingly transported marijuana.

1.  At the border, petitioner "did not act as a man at ease and with innocent mind." Specifically, as Officer Abanico carried out his inspection of the truck, petitioner violated port policy by speaking on a cell phone and repeatedly ignored instructions to cease doing so.

2.  When questioned by Special Agent Encinas, petitioner "was very nervous and fidgeting in his seat." Petitioner also unequivocally denied prior involvement in money transfer activities. However, after being confronted with documents showing that petitioner was involved in 1998 and 1999 with import/export transactions of $30,000 and $27,000, petitioner "became flustered, changed his story, and then stated that he had been involved in such transactions, but could not remember the exact details."

3.  Trucking regulations "mandate that the trucker record the location of each stop." When petitioner made a stop at the Bajas Produce company in Los Angeles on December 12, 2002 (the day before the discovery of the marijuana), he should have but did not "make a Bajas Produce entry in his log book for December 12, 2002." Rather, Special Agent Encinas observed that the log book showed a stop that day at the Los Angeles market.

4.  Agent Lehmann, who has many years of experience regarding the illicit trafficking in narcotics

across the border, testified "that it would be highly unusual for a courier . . . to be totally unaware of the presence of more than 8,500 pounds of marijuana in the truck that he was driving." He testified that the owner would not take the chance of giving millions of dollars worth of marijuana to an unknowing courier because "loss of the load would be a catastrophic loss to the owner thereof."

Regarding petitioner's testimony denying knowledge of the marijuana, the IJ stated only that "[t]he mere fact that the [petitioner] does not admit guilty knowledge . . . does not preclude a finding against him on this issue." On September 13, 2004, the IJ ordered petitioner removed from the United States to Mexico.[2]

Petitioner appealed to the BIA. On January 4, 2006, the BIA dismissed the appeal because substantial evidence supported the IJ's conclusion that petitioner was inadmissible. The BIA relied in part on reasoning similar to the IJ's. The BIA also found that, although petitioner testified that Lara denied ownership of the drugs, Lara retained counsel for petitioner during related criminal proceedings.[3] Additionally, the BIA found that, although petitioner initially claimed that he did not have fear of reprisal from the owner of the marijuana, he later testified that he feared returning to Mexico as " 'this persons that did this with me would take reprisals against me.' " Notably, while the IJ, citing *Matter of Rocha*, 20 I&N Dec. 944, focused the inquiry on whether the officials at the border had reason to believe petitioner was engaged in drug trafficking, the BIA, citing *Lopez-Molina v. Ashcroft*, 368

---

[2]In addition to finding petitioner inadmissible, the IJ denied petitioner's application for cancellation of removal. The BIA affirmed. The cancellation issue has not been raised in this petition for review.

[3]The government represents that criminal charges against petitioner were ultimately dismissed on motion of the government.

F.3d 1206 (9th Cir. 2004), and *Alarcon-Serrano v. INS*, 220 F.3d 1116, 1119 (9th Cir. 2000), appears to have focused on whether substantial evidence supported the IJ having reason to believe, based on the totality of the evidence at the evidentiary hearing, that petitioner was participating in drug trafficking.

The IJ made no explicit adverse credibility finding with respect to petitioner's testimony. Indeed, because the IJ found, based on *Matter of Rocha*, that the "reason to believe" is the border "officer's belief at the time the alien is encountered at the port of entry," it appears that the IJ did not believe that it was necessary or appropriate to evaluate the veracity of petitioner's testimony at the hearing at all.

The BIA reviewed the IJ's conclusions under the "substantial evidence" standard. Although the BIA noted arguable inconsistencies in petitioner's testimony, the BIA's only mention of petitioner's credibility came in a footnote, which reads in its entirety:

> The [petitioner] argues that his claim of lack of knowledge must be accepted under Ninth Circuit credibility case law, absent a supportable adverse credibility ruling by the Immigration Judge. Unlike asylum cases, for example, where the issue is most often an alien's past persecution or well-founded fear of future persecution, the focus of the [petitioner's] case was whether an immigration officer has reason to believe the [petitioner] is a drug trafficker. A reasonable immigration officer is not required to accept a claim of innocence when the totality of the evidence points the other way.

Following the BIA's decision, petitioner timely filed this petition for review. In a May 3, 2006 Order, this court stayed petitioner's removal.

## II.  JURISDICTION AND STANDARD OF REVIEW

Under 8 U.S.C. § 1182(a)(2)(C),

> [a]ny alien who the consular officer or the Attorney General knows or has reason to believe . . . is or has been an illicit trafficker in any controlled substance or in any listed chemical (as defined in section 802 of Title 21), or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, or endeavored to do so . . . is inadmissible.

The court must "determine whether 'reasonable, substantial, and probative evidence' supports the IJ's 'reason to believe' that [petitioner] knew he was participating in illicit drug trafficking." *Lopez-Molina*, 368 F.3d at 1211 (quoting *Alarcon-Serrano*, 220 F.3d at 1119). In addressing this question, it is appropriate to examine the reasoning and findings of both the BIA and IJ. *See Alarcon-Serrano*, 220 F.3d at 1119-20. In *Lopez-Molina*, we held that, if substantial evidence supports the IJ's reason to believe that petitioner knowingly participated in illicit trafficking of drugs, the court is barred from reviewing other legal claims arising out of the removal order pursuant to 8 U.S.C. § 1252(a)(2)(C), and the petition for review must be dismissed for lack of jurisdiction. *See* 368 F.3d at 1212. Subsequent to *Lopez-Molina* and *Alarcon-Serrano*, however, the REAL ID Act clarified that "[n]othing in [8 U.S.C. § 1252(a)(2)(B)-(C)] . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). Although there is arguably now a tension between the statute and our holding in *Lopez-Molina*, we are unable to determine whether substantial evidence supports the agency's decision in this case for the reasons explained below, and we therefore have jurisdiction over the petition in any event.

## III.   DISCUSSION

In the course of his argument, petitioner raises two preliminary questions of law which must be resolved before addressing whether substantial evidence exists to support the IJ's "reason to believe." First, petitioner argues that information not available to the examining officers at the time petitioner sought admission at the Otay Mesa Port of Entry is not relevant to the "reason to believe" inquiry and should not have been considered by the IJ. Second, and presumably in the alternative, petitioner argues that unless the IJ makes an explicit adverse credibility finding regarding petitioner's testimony at the hearing, the court must take petitioner's testimony as true. As explained below, petitioner's contentions are not correct. Nevertheless, we remand this matter because the IJ applied the incorrect standard in evaluating whether there was "reason to believe," and therefore appears to have wrongly assumed that he could not take into consideration whether or not petitioner testified credibly that he had no knowledge of the marijuana.

### A.   *Defining "Reason to Believe"*

Citing *Matter of Rocha*, 20 I&N Dec. 944, petitioner argues that, as the IJ held in this case, the relevant "reason to believe" is the immigration officer's belief at the time the alien is encountered at the port of entry. Here, officers who encountered petitioner at the border on December 13, 2002, did testify before the IJ about what they observed at that time. Officer Abanico inspected petitioner's truck and testified that he found the marijuana and that petitioner made phone calls in violation of policy and oral instructions. Special Agent Encinas questioned petitioner shortly after the marijuana was discovered and testified that petitioner had a demeanor consistent with a drug trafficker, that petitioner's log book omitted a stop at Bajas Produce, and that petitioner made inconsistent statements about his history of transporting money across the border.

However, both the IJ and BIA also relied on other information that was not available to anyone at the border on December 13, 2002. Agent Lehman, who did not take part in events at the border, testified as an expert that, based on his years of experience, it would be highly unusual for a drug smuggler to entrust such a large quantity of drugs to an unknowing courier. Inspector Rodriguez described his interview with petitioner on January 9, 2003, about a month after petitioner's attempt to cross the border. Although the BIA and IJ did not rely on information provided by Inspector Rodriguez, both the IJ and BIA relied on Agent Lehman's expert testimony. Additionally, although not noted by the petitioner, the BIA relied on other pieces of information that were not available to anyone at the border on December 13, 2002, such as a statement made by petitioner at the hearing and the fact that the owner of the trucking company retained an attorney for petitioner during criminal proceedings arising out of the seizure of marijuana at the border. Petitioner argues that this later-acquired information cannot properly be considered in deciding whether there was the requisite "reason to believe" that he knowingly transported the seized marijuana.

In its brief, submitted in 2006, the government, citing *Lopez-Molina*, 368 F.3d at 1209-11, argues that we should look to whether substantial evidence supports the IJ having the necessary "reason to believe." *See* Resp.'s Brief at 31. At oral argument, however, the government argued that the court should follow the BIA's 2010 precedential decision in *Matter of Casillas-Topete*, which recognizes that *Matter of Rocha* was superseded by statute and requires instead that "the information [creating 'reason to believe'] was demonstrably known to an appropriate immigration official when the admission occurred," but not necessarily to the inspecting immigration officer. *Matter of Casillas-Topete*, 25 I&N Dec. at 321.

We are, therefore, required to decide who must have the necessary "reason to believe" and at what time. Although the Ninth Circuit and BIA precedent might initially appear incon-

sistent, we conclude that, in fact, the BIA's approach in *Matter of Casillas-Topete* and our court's approach in *Alarcon-Serrano* and later cases are reconcilable. This conclusion requires some discussion of the relevant cases, particularly because it appears that we are the first court of appeals to address the implications of *Matter of Rocha* and *Matter of Casillas-Topete*. Indeed, it appears we are the first court of appeals ever to cite these precedential decisions of the BIA.

1. *Matter of Rocha: the BIA Construes the Pre-1999 Version of § 1182(a)(2)(C)*

**[1]** In 1995, in *Matter of Rocha*, the BIA applied an earlier version of § 1182(a)(2)(C), which at that time excluded "any alien who the consular or *immigration officer* knows or has reason to believe" is a drug trafficker. *See* 20 I&N Dec. at 945 (quoting § 1182(a)(2)(C)) (emphasis added). In that case, an alien was admitted into the United States without incident. *See id.* at 944. Indeed, it was uncontested that the alien "made an 'entry' " into the United States before encountering any problems. *See id.* at 946. Subsequently, however, the alien was stopped at a traffic checkpoint, found to be in possession of marijuana, and charged with being deportable under 8 U.S.C. § 1251(a)(1)(A) (now 8 U.S.C. § 1227(a)(1)(A)) on the basis of being excludable at the time of entry under § 1182(a)(2)(C). *See id.* at 944-45. The BIA held that "the particular examining officer who inspected the [alien] must in fact have known or suspected that the [alien] was a trafficker at the time of his application for admission." *Id.* at 946. Because the marijuana was not found until after the alien made entry, the examining officer could not have had the necessary "reason to believe," and the alien's deportation proceedings were terminated. *See id.* at 946-48.

2. *Matter of Casillas-Topete: the BIA Construes the Post-1999 Version of § 1182(a)(2)(C)*

**[2]** In 2010, in *Matter of Casillas-Topete*, the BIA held that *Matter of Rocha* was superseded by statute. *See* 25 I&N

Dec. at 321. In *Matter of Casillas-Topete*, officials within the Department of Homeland Security ("DHS") knew petitioner had been convicted of unlawful transportation of marijuana for sale while residing in the United States and placed him in deportation proceedings on that basis. *See id.* at 318. However, the alien then left the United States and, upon his return, was admitted. *See id.* DHS then withdrew the original deportation charges and lodged a new deportation charge that the alien (like the alien in *Matter of Rocha*) was deportable under 8 U.S.C. § 1227(a)(1)(A) on the basis of being inadmissible at time of admission under § 1182(a)(2)(C) because there was reason to believe he was a drug trafficker based on his earlier conviction. *See id.* The IJ, citing *Matter of Rocha*, concluded the alien was not inadmissible because the particular officer examining him at the border did not know or suspect he was a drug trafficker. *See id.*

**[3]** The BIA vacated the IJ's decision based on the 1999 amendment to § 1182(a)(2)(C), which broadened the text to render inadmissible, and therefore removable, " '[a]ny alien who the consular officer or the *Attorney General* knows or has reason to believe' " is a drug trafficker. *See id.* at 319 (quoting Intelligence Authorization Act for Fiscal Year 2000, Pub. L. No. 106-120, § 809, 113 Stat. 1606, 1632 (effective Dec. 3, 1999)) (emphasis added). The BIA also noted that, given the Homeland Security Act of 2002, the reference to the Attorney General should be read to include the Secretary of Homeland Security. *See id.* at 320 (citing Homeland Security Act of 2002, Pub. L. No. 107-296, § 1517, 116 Stat. 2135, 2311 (enacted Nov. 25, 2002) (codified at 6 U.S.C. § 557)). In light of these statutory amendments, the BIA held that "it is not relevant under the terms of the statute that the inspecting immigration officer does not have access to information regarding the alien's trafficking if that information is known to other immigration officials." *See* 25 I&N Dec. at 321. "Thus, as long as the information was demonstrably known to an appropriate immigration official *when the admission occurred*, it can be relied on to sustain the charge." *See id.*

(emphasis added); *cf. Hing Sum v. Holder*, 602 F.3d 1092, 1096 (9th Cir. 2010) (defining admission); *Matter of Rosas-Ramirez*, 22 I&N Dec. 616, 618-20 (BIA 1999) (same). The BIA vacated the IJ's decision because DHS officials knew of the alien's conviction at the time he was admitted, even if the particular examining officer at the border did not. *See id.*

### 3.  *Ninth Circuit Precedent*

**[4]** In 2000, in *Alarcon-Serrano*, petitioner was detained at the border after officers found concealed marijuana in his vehicle, and he was then placed in exclusion proceedings under the narrower pre-1999 version *of § 1182(a)(2)(C). See* 220 F.3d at 1117-18.**[4]** Applying the pre-1999 version of § 1182(a)(2)(C), we held that "the only requirement is that an *immigration officer* 'knows or has reason to believe' that [petitioner] is an illicit trafficker in controlled substances or that [petitioner] has knowingly assisted, abetted, conspired with, or colluded with others in such illicit trafficking." *Id.* at 1119 (emphasis added). In the next sentence, the court held that "[t]he appropriate way of measuring whether the *IJ and BIA* had 'reason to believe' that [petitioner] knew he was participating in drug trafficking is to determine whether substantial evidence supports such a conclusion." *Id.* (emphasis added). Thus, we held that, under the pre-1999 version of § 1182(a)(2)(C), the focus is upon the information available to the IJ and BIA, at least where the alien seeks adjudication of admissibility *before* admission. *See id.* at 1119-20. The court in *Alarcon-Serrano* employed this approach, focusing on the veracity of petitioner's testimony before the IJ, and information derived from it, which could not have been available to officers at the border or on the day petitioner was apprehended at the border. *See id.* at 1118, 1119-20.

---

**[4]**Petitioner was also charged with a different ground of exclusion, but the IJ, BIA, and Ninth Circuit did not address or rely upon that ground. *See Alarcon-Serrano*, 220 F.3d at 1117 n.3.

**[5]** In 2004, in *Lopez-Molina*, petitioner was admitted to the United States as a visitor in 1995, and a year later was charged with misprision of felony arising out of a drug-related arrest in 1990, to which he ultimately pled guilty. *See* 368 F.3d at 1207. Petitioner later applied to adjust his status to permanent resident. *See id.* His application was denied, and he was charged with being deportable under 8 U.S.C. § 1227(a)(1)(A) because he was inadmissible under § 1182(a)(2)(C) at the time of adjustment of status. *See id.*

**[6]** Applying the broader post-1999 version of § 1182(a)(2)(C), we held that "[t]he only requirement under § 1182(a)(2)(C) is that an immigration official has 'reason to believe' that the alien is or has been involved in illicit drug trafficking." *Id.* at 1209 & n.5. Citing *Alarcon-Serrano*, the court held that "we must . . . determine whether 'reasonable, substantial, and probative evidence' supports *the IJ's* 'reason to believe' that [petitioner] knew he was participating in illicit drug trafficking. *Id.* at 1211 (quoting *Alarcon-Serrano*, 220 F.3d at 1119) (emphasis added). Thus, in *Lopez-Molina*, the court imported the holding of *Alarcon-Serrano* into the application of the post-1999 version of § 1182(a)(2)(C). *See id.* This importation is consistent with the BIA's reasoning in *Casillas-Topete* that the amendments to the statute substituted the broad term "Attorney General [or Secretary of Homeland Security]" in place of the narrower term "immigration officer." *See* 25 I&N Dec. at 319-20. In *Alarcon-Serrano*, we construed the IJ to be the "immigration officer" before the 1999 amendment, *see* 220 F.3d at 1119-20, and the IJ, an employee of the Department of Justice, fits even more comfortably with the term "Attorney General." *See Casillas-Topete*, 25 I&N Dec. at 320.[5]

---

[5]After the Homeland Security Act of 2002, the IJ and the BIA remain in the Department of Justice and implement its immigration-related adjudicative functions. *See Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005).

Ultimately, the court in *Lopez-Molina* found the necessary "reason to believe" based on records of petitioner's 1990 arrest and his later guilty plea resulting in a criminal conviction, which existed at the time of his 1997 application to adjust his status. *See* 368 F.3d at 1208, 1211. Evidently the immigration authorities were aware of these documents at the time of the application for adjustment, as they denied the application and "soon thereafter" initiated removal proceedings based on the arrest and conviction. *See id.* at 1207.

In 2005, in *Lopez-Umanzor v. Gonzales*, the petitioner entered the United States illegally, was placed in removal proceedings, and then applied for cancellation of removal under 8 U.S.C. § 1229b(b)(2). *See* 405 F.3d 1049, 1050 (9th Cir. 2005). To qualify for cancellation of removal, petitioner had to show at that time, among other things, that she was not inadmissible under § 1182(a)(2)(C). *See id.* at 1053. The government contended there was reason to believe the petitioner was a drug trafficker because she had been charged in Alaska with Misconduct Involving a Controlled Substance based on evidence of involvement with cocaine distribution. *See id.* at 1052. That charge, however, had been dismissed, and petitioner testified before the IJ that she was never involved in drug trafficking and that there was an innocent explanation for the circumstantial evidence of such involvement. *See id.*

Adopting the holding of *Alarcon-Serrano*, our court stated that " '[t]he appropriate way of measuring whether the IJ and BIA had reason to believe' that a petitioner is involved in drug trafficking is to assess 'whether substantial evidence supports such a conclusion.' " *Id.* at 1059 n.10 (quoting *Alarcon-Serrano*, 220 F.3d at 1119). In *Lopez-Umanzor*, we held that the IJ and BIA are among those included in the collective term "Attorney General [or Secretary of Homeland Security]," at least where the question is whether the alien is inadmissible at the time of IJ's evidentiary hearing. *See id.* at 1053, 1059 n.10. The analysis in *Lopez-Umanzor* reflects that approach, as it focuses on "one question: who was telling the

truth [at the evidentiary hearing] about Petitioner's alleged involvement in drug trafficking, Petitioner or [a detective]?" *See id.* at 1053. This question would only be relevant if information received by the IJ at the evidentiary hearing could be considered in the "reason to believe" analysis. The court concluded it should be considered. *See id.* at 1058-59. Ultimately, it held that the IJ improperly made an adverse credibility determination regarding petitioner's testimony and remanded for a new hearing, preferably before a different IJ. *See id.* at 1059.

4. *The Various "Reason to Believe" Cases Are Not in Conflict*

**[7]** The BIA's decision in *Casillas-Topete* and this circuit's approach in *Alarcon-Serrano* and later cases lead to the following, consistent conclusions.

**[8]** 1. The IJ and BIA may, depending on the circumstances, be among the "appropriate immigration officials" included in the term "Attorney General [or Secretary of Homeland Security]" in § 1182(a)(2)(C). *See Lopez-Molina*, 368 F.3d at 1211-12; *Alarcon-Serrano*, 220 F.3d at 1119; *Casillas-Topete*, 25 I&N Dec. at 321.

**[9]** 2. The "appropriate immigration officials" may make a finding of "reason to believe" based only on information available "when the admission occurred." *See Casillas-Topete*, 25 I&N Dec. at 321. Therefore, the appropriate immigration officials must collectively know the information before the alien makes lawful entry into the United States after inspection and authorization by an immigration officer. *See* 8 U.S.C. § 1101(a)(13)(A); *Hing Sum*, 602 F.3d at

1096 (defining admission); *Matter of Rosas-Ramirez*, 22 I&N Dec. at 618-20 (same).

**[10]** 3.    Accordingly, where the alien is apprehended at the border and, rather than being admitted, is charged with being inadmissible, information learned by the IJ during the subsequent proceedings to determine inadmissibility may be considered in deciding whether there is "reason to believe" the alien is involved in drug trafficking. *See Alarcon-Serrano*, 220 F.3d at 1119-20.[6] However, if the alien is admitted, information not known to an appropriate immigration official when the admission occurred may not later be relied upon to sustain a charge that the alien was inadmissible at the time of admission.[7] *See Casillas-Topete*, 25 I&N Dec. at 321.

**[11]** Applying these principles, the proper question in this case is whether substantial evidence supports the IJ and BIA having "reason to believe" petitioner knowingly engaged in drug trafficking based on all the evidence known to the IJ at the time of the IJ's decision. *See Alarcon-Serrano*, 220 F.3d at 1119-20. As in *Alarcon-Serrano*, and unlike in *Casillas-Topete*, petitioner arrived at the border and was apprehended and alleged to be inadmissible. *Compare Alarcon-Serrano*,

---

[6]This conclusion is consistent with the BIA's approach in *Matter of Rico*, 16 I&N Dec. 181, 182-86 (BIA 1977), a case applying a predecessor statute to § 1182(a)(2)(C) and cited by the BIA in its decision in this case. In *Matter of Rico*, the alien was apprehended at the border and detained for an exclusion hearing. *See id.* at 182. The BIA clearly found the alien's testimony before the IJ relevant but simply disbelieved it. *See id.* at 186.

[7]Because petitioner was charged with being inadmissible at the time of his hearing, we need not, and do not, decide whether the IJ may consider an alien's post-admission testimony in evaluating the evidence known at the time of admission.

220 F.3d at 1118-19, *with Casillas-Topete*, 25 I&N Dec. at 318. In the Notice to Appear, petitioner was charged as an arriving alien. Therefore, consistent with the conclusions articulated above, the IJ, as a representative of the Attorney General, was free to receive new information at the evidentiary hearing, and to decide its credibility and weight. *See Alarcon-Serrano*, 220 F.3d at 1119-20. It was permissible and appropriate for the IJ and BIA to rely on such information in determining whether there was "reason to believe" petitioner was knowingly transporting marijuana when he attempted to cross the border into the United States. *See id.* Accordingly, we conclude that it was proper for the IJ to receive and consider petitioner's testimony, Agent Lehman's opinion, and other information not necessarily known, actually or constructively, to officers at the border on December 13, 2002.

B. *No Explicit Adverse Credibility Determination Is Required*

Petitioner also argues that where, as here, the IJ does not make an explicit adverse credibility finding regarding petitioner's testimony, the court must assume that the petitioner's factual assertions are true. This contention alone, if correct, would require that this court grant the petition. *See Lopez-Umanzor*, 405 F.3d at 1058-59. As in *Lopez-Umanzor*, the credibility of petitioner's denial of knowledge is the critical issue in the litigation. *See id.* If petitioner's testimony that he did not know he was transporting marijuana was deemed credible by the IJ and BIA, they could not — and presumably would not — have found that the other evidence provided the required reason *for them* to believe otherwise. *See id.* Although the government did not directly address this argument in its initial response to the petition, we ordered supplemental briefing addressing this issue. We hold that in this case we need not take petitioner's testimony as true for lack of an explicit adverse credibility determination.

**[12]** In 2004, in *Kalubi v. Ashcroft*, an asylum case, we held that "[i]n this circuit adverse credibility findings *in the eligibility phase* must be express and the IJ must offer a 'specific, cogent reason for any stated disbelief.' " 364 F.3d 1134, 1137 (9th Cir. 2004) (quoting *He v. Ashcroft*, 328 F.3d 593, 595 (9th Cir. 2003)) (emphasis added). With one exception, this statement of the law is consistent with the cases cited by the parties and found by the court. *See, e.g.*, *Lopez-Alvarado v. Ashcroft*, 381 F.3d 847, 851 (9th Cir. 2004) (eligibility for cancellation of removal); *Damon v. Ashcroft*, 360 F.3d 1084, 1086 n.2 (9th Cir. 2004) (eligibility for waiver of under 8 U.S.C. § 1186a(c)(4)); *Kataria v. INS*, 232 F.3d 1107, 1113-14 (9th Cir. 2000) (eligibility for asylum); *Leiva-Montalvo v. INS*, 173 F.3d 749, 750 (9th Cir. 1999) (eligibility for asylum and withholding of removal).[8] Indeed, shortly after this case was argued and submitted, another panel of this court held that "there is no general requirement that the testimony of an applicant seeking admission to the United States outside of the asylum context be regarded as true" in the absence of an explicit adverse credibility determination. *Abufayad v. Holder*, 632 F.3d 623, 631 (9th Cir. 2011).[9]

The exception referenced above is *McDonald v. Gonzales*, in which the court stated in a footnote that the IJ did not make an explicit adverse credibility determination when deciding whether the alien was removable for voting in violation in Hawaiian law. *See* 400 F.3d 684, 686 n.2 (9th Cir. 2005). In that case, however, the court did not rely on the alien's credibility, but instead granted the petition because the facts found by the IJ did not constitute a violation of the relevant law in

---

[8]The government agrees the pre-REAL ID Act standards for credibility determinations apply in this case.

[9]Although *Abufayad* established the lack of a "general requirement" and did not apply the rule in that particular case, it left open the possible application of the rule in other categories of cases in which "adjustment to normal evidentiary burdens is . . . warranted" and does not necessarily control this case. *See* 632 F.3d at 631.

any event. *See id.* at 689-90. Therefore, although the court in *McDonald* noted the existence of the principle at issue, it had no occasion to extend it beyond the eligibility phase, nor did it purport to do so. *See id.* at 686 n.2. We are not, therefore, bound by *McDonald*'s footnote to conclude that an explicit adverse credibility determination was required in this case. *See United States v. Joyce*, 357 F.3d 921, 924-25 & n.3 (9th Cir. 2004).

**[13]** As in *Abufayad*, we decline to extend "[t]he 'deemed true' convention" to this new context because we see no need to adjust the normal evidentiary burdens. *See* 632 F.3d at 631. Accordingly, we are not required to take petitioner's testimony as true in the absence of an explicit adverse credibility determination, because this question does not arise in the context of deciding a petitioner's eligibility for relief from removal. *See Kalubi*, 364 F.3d at 1137; *Lopez-Alvarado*, 381 F.3d at 851.

C. *Remand for Decision Based on All Evidence Properly Before the IJ, Including Petitioner's Testimony*

**[14]** Because the IJ did not understand that he could consider credible testimony by petitioner, he evidently did not, even implicitly, make a decision regarding petitioner's credibility. Failure of the IJ and BIA to evaluate the credibility of a petitioner's testimony in a case like this is a fundamental flaw, which deprives a petitioner of his right to have his testimony considered and precludes effective review. *Cf. Lopez-Umanzor*, 405 F.3d at 1053-54, 1059 ("Had the IJ believed Petitioner's explanation, then she would have met the statutory criteria for relief.").

**[15]** If petitioner's denial is not credible, then circumstantial evidence may establish the requisite "reason to believe" that he knew he was transporting drugs. *See Alarcon-Serrano*, 220 F.3d at 1120 (finding substantial evidence of "reason to believe" based on circumstantial evidence where "[b]oth the

BIA and the IJ disbelieved [petitioner's] testimony claiming lack of knowledge"). Here, however, it appears the IJ did not evaluate the credibility of petitioner's denial of knowledge because the IJ incorrectly concluded that the "reason to believe" is the officer's belief at the time the alien is encountered at the port of entry and that petitioner's later denial of knowledge was, therefore, irrelevant. The BIA also appears to have made no credibility determination of its own and may have instead concluded, erroneously, that the IJ had already made an implicit adverse credibility determination. In these circumstances, it is appropriate to remand for further proceedings to evaluate the credibility of petitioner's testimony that he did not know he was transporting marijuana, and the effect of that determination on the question of whether the IJ or BIA had "reason to believe" in light of all the evidence placed before the IJ during the course of these proceedings. *See Lopez-Umanzor*, 405 F.3d at 1059; *Hartooni v. INS*, 21 F.3d 336, 343 (9th Cir. 1994) (remanding for a credibility determination where the BIA relied on the IJ's credibility determination when, in fact, the IJ did not make such a credibility finding); *see also Kho v. Keisler*, 505 F.3d 50, 56 (1st Cir. 2007) ("If, in the absence of a credibility finding by the IJ, a reviewing court determines that such a finding is necessary for effective review of the case, it may remand to the agency for further factfinding."). We remand for such proceedings and do not decide the substantial evidence question because it is premature to do so.

**PETITION GRANTED; REMANDED with instructions.**