NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

AUG 11 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

OREAN OSHANE CARR,

  Petitioner,

v.

WILLIAM P. BARR, Attorney General,

  Respondent.

No.  17-71352

Agency No. A087-757-239

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 16, 2020
San Francisco, California

Before:  IKUTA and HURWITZ, Circuit Judges, and TAGLE,[**] District Judge.
Dissent by Judge TAGLE

Orean Oshane Carr, a native and citizen of Jamaica, petitions for review of a

decision of the Board of Immigration Appeals ("BIA") dismissing his appeal from

an order of an Immigration Judge ("IJ") denying his applications for adjustment of

status, cancellation of removal, and voluntary departure.  We deny the petition in

---

[*]   This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]   The Honorable Hilda G. Tagle, United States District Judge for the
Southern District of Texas, sitting by designation.

part and dismiss it in part.

1.      Substantial evidence supports the agency's determination that Carr is inadmissible, and therefore ineligible for adjustment of status, 8 U.S.C. § 1255(a), because there is "reason to believe" that he was "a knowing aider [or] abetter . . . in the illicit trafficking in [a] controlled or listed substance." 8 U.S.C. § 1182(a)(2)(C)(i); *see Gomez-Granillo v. Holder*, 654 F.3d 826, 831 (9th Cir. 2011).[1] Officer Frank Steven Moreno, a veteran police officer with 13 years of experience in narcotics enforcement, testified that he was undercover on an unrelated case at a shipping facility when Carr entered with a package, nervously "looking in all directions." Carr made eye contact with Officer Moreno, set the package on the ground, and walked to the exit. Officer Moreno approached Carr at the door, identified himself as a police officer, and stated that he suspected the package contained contraband. Carr replied that the box was not his and consented to a

---

[1]      The Immigration and Nationality Act does not define "reason to believe" in this context, but we have likened similar language in the Act to probable cause. *See, e.g.*, *Go v. Holder*, 640 F.3d 1047, 1052 (9th Cir. 2011); *Abufayad v. Holder*, 632 F.3d 623, 630 (9th Cir. 2011). We "examine the reasoning and findings of both the BIA and IJ," and ask "whether substantial evidence supports the IJ and BIA having 'reason to believe' petitioner knowingly engaged in drug trafficking based on all the evidence known to the IJ at the time of the IJ's decision," including "other information not necessarily known" at the time of the precipitating incident. *Gomez-Granillo*, 654 F.3d at 836; *see also Lopez-Molina v. Ashcroft*, 368 F.3d 1206, 1207-08, 1211 (9th Cir. 2004) (reviewing information available to IJ when the government charged petitioner as removable).

search, but then fled. After Carr was stopped, a drug-sniffing dog alerted to the package and a search warrant was obtained. Officer Moreno opined that the package contained about ten pounds of marijuana.[2] Carr's apparent nervousness, flight, and the quantity of marijuana seized reasonably support an inference that Carr knew what the package contained.

2. Although Carr testified that he agreed to ship the package for a friend and did not know it contained drugs, substantial evidence supports the IJ's adverse credibility determination. *See Gomez-Granillo*, 654 F.3d at 838 ("If petitioner's denial is not credible, then circumstantial evidence may establish the requisite 'reason to believe' that he knew he was transporting drugs."). Carr testified that he fled because he was scared and did not know that Moreno and a colleague who approached him were police officers. However, the IJ reasonably found that account "implausible" and credited Officer Moreno's testimony that he not only identified himself to Carr but "always" identifies himself. "While a generous fact-finder might have believed [Carr's] version of the facts, both the BIA and IJ were clearly within reason on these facts and circumstances to conclude otherwise." *Alarcon-Serrano v. INS*, 220 F.3d 1116, 1120 (9th Cir. 2000).[3]

---

[2]　The seized substance was never tested and the criminal charges against Carr were dismissed a week later; the record does not indicate the reason for the dismissal.

[3]　Even assuming the credibility of Carr's wife, her testimony does not compel a contrary conclusion. Although she testified that she saw no evidence that Carr was

3.     "We lack jurisdiction to review the BIA's discretionary determination that [Carr] failed to satisfy the 'exceptional and extremely unusual hardship' requirement for cancellation of removal." *Romero-Torres v. Ashcroft*, 327 F.3d 887, 892 (9th Cir. 2003); *see* 8 U.S.C. § 1252(a)(2)(B)(i).

4.     We also lack jurisdiction to review the discretionary denial of voluntary departure because Carr has not raised a colorable constitutional claim or question of law. *See Corro-Barragan v. Holder*, 718 F.3d 1174, 1177 (9th Cir. 2013).  Carr's argument that the BIA failed to consider factors in his favor is belied by the record; the BIA recognized that Carr has lived in the United States for many years, cares for his children and citizen wife, and is respected in the community.

**PETITION FOR REVIEW DENIED IN PART and DISMISSED IN PART.**

---

involved in drug trafficking, she did not live with Carr at the time of the incident at issue.  And, although she testified that Carr did not use drugs, he admitted to daily use of marijuana from 2010 to 2013.

FILED

AUG 11 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

TAGLE, District Judge, dissenting:

While I agree with many of the majority's conclusions in this case, I believe the majority errs in its determination that substantial evidence supports the Board's drug trafficking conclusion and I must dissent.

Under 8 U.S.C. § 1182(a)(2)(C)(i) a person is ineligible for adjustment of status when there is "reason to believe" that he was "a knowing aider [or] abetter… in the illicit trafficking in [a] controlled or listed substance." As the majority correctly notes, in other contexts a "reason to believe" has been equated with the criminal probable cause standard. *See supra* pg 2 n.1. Probable cause requires "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed." *Rodis v. City, Cty. of San Francisco*, 558 F.3d 964, 969 (9th Cir. 2009). This record lacks sufficient reasonably trustworthy information for the conclusion that Carr was a knowing aider of illicit drug traffickers.

There is not substantial evidence to discredit Carr's testimony. According to the majority, Carr testified the police officers did not identify themselves which was inconsistent with Moreno's testimony. *Supra* at 3. Yet, the record demonstrates Carr's testimony about whether the police officers identified themselves and showed a badge when approaching Carr was "I don't remember" and "I don't remember

1

seeing it." Carr testified he ran because "…it was a plainclothes, and I didn't know what was going on." A lack of recollection is not an inconsistency on which a person could be impeached or found not credible.

Even if an inconsistency exists on which to find Carr's testimony not credible, discrediting Carr's testimony does not establish that Carr knew there was marijuana inside the box. There still must be substantial evidence of Carr's knowledge on which to base the knowing drug trafficking inadmissibility bar.

To support the position that Carr knew what was in the box, the majority relies on "Carr's apparent nervousness, flight, and the quantity of marijuana seized…" *Supra* at 3.

The box containing the suspected marijuana was closed when Carr brought it to the shipping facility. The quantity of marijuana found was approximately ten pounds. A closed box weighing ten pounds is not probative of Carr's knowledge.

The flight of an undocumented person of color from police also gives no support to the conclusion that Carr knew what was in the box. Nervousness and flight from police are not necessarily indicative of ongoing criminal activity. *See Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). "The Court has a long history of recognizing that innocent people may reasonably flee from the police." *United States v. Brown*, 925 F.3d 1150, 1155 (9th Cir. 2019). Justice Steven's statement in *Wardlow* is worth repeating: "Among some citizens, particularly minorities and those residing in high

crime areas, there is also the possibility that the fleeing person is entirely innocent, but, with or without justification, believes that contact with the police can itself be dangerous, apart from any criminal activity associated with the officer's sudden presence." *Wardlow*, 528 U.S. at 132 (Stevens, J. concurring in part).

Probable cause depends on the totality of the circumstances. *Rodis*, 558 F.3d at 969. Carr did not bolt at a border crossing. *See United States v. Garcia*, 516 F.2d 318 (9th Cir. 1975). Carr ran after being approached by a plain-clothed police officer who showed a badge under his polo t-shirt at a shipping store in Tucson. Basing probable cause solely on nervousness and flight punishes people who fear police and lowers the already minimal evidentiary standard.

There was no evidence that Carr received the package from a known drug trafficker; that Carr was shipping the package to a suspected trafficker; that he received unusually large compensation for shipping the box; or any other circumstantial evidence which points towards Carr's knowledge of the contents of the box before arriving at the shipping facility.

Moreno's testimony does not support the conclusion that Carr knew what was in the box. Moreno offered no specific evidence on which to base the conclusion that Carr knew what was inside the package. There was no evidence of any prior direct or indirect contact between Moreno and Carr. Carr did not match a suspected courier profile or other identification. Moreno himself testified he was not sure Carr knew

what was inside the package. Moreno formed a hunch based on his opinion that Carr looked nervous. A hunch does not equal probable cause.

The facts that the arresting officer is unsure of an essential element of knowledge and that the prosecutor declined to pursue charges lend credence to the conclusion that substantial evidence of probable cause was not present. Given the immediate parties' doubts, a reviewing judicial body so far removed from the events in question should thoroughly examine all direct and circumstantial evidence in the record for substantial evidence of probable cause for imposing the knowing drug-trafficking bar.

When similarly faced with an absence of substantial facts to establish a drug trafficking bar other circuits have reversed. *See Garces v. Att'y Gen.*, 611 F.3d 1337, 1350 (11th Cir. 2010); *Igwebuike v. Caterisano*, 230 F. App'x 278, 283 (4th Cir. 2007). Instead, the majority's affirmance presumptively punishes a person who flees from police. Such a presumption does not achieve the purposes of 8 U.S.C. § 1182 or fulfill the promise of due process and equal protection before the law.

I would reverse the Board's conclusion that Carr is inadmissible and therefore ineligible for adjustment of status. I respectfully dissent.