**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ELLEN VALLE MCDONALD,

          *Petitioner,*

v.

ALBERTO GONZALES,* Attorney
General,

          *Respondent.*

No. 03-71986

Agency No.
A44-435-234

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 7, 2005—Pasadena, California

Filed: March 2, 2005

Before: Warren J. Ferguson, John T. Noonan and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Hawkins

---

*Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

2445

## COUNSEL

Stuart I. Folinsky (briefed and argued), Los Angeles, California, for the petitioner.

Nancy Friedman (argued) and Barry J. Pettinato (briefed), Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

HAWKINS, Circuit Judge:

Ellen Valle McDonald, a native of the Philippines and legal permanent resident of the United States, was found removable under 8 U.S.C. § 1227(a)(6)(A) for voting in violation of Hawaii law. Although § 1227(a)(6)(A) provides the reason for deportation, we look to the relevant Hawaii statute, H.R.S. § 19-3.5(2), to decide whether that reason is substantiated, i.e., whether a violation occurred. Because we determine that McDonald did not have the requisite mental state to have violated H.R.S. § 19-3.5(2), we grant her petition.

## FACTS AND PROCEDURAL HISTORY

McDonald lived in Hawaii with her U.S. Citizen husband and their U.S. Citizen child. When McDonald applied for a Hawaii driver's license, under Hawaii's Motor Voter procedures, she also registered to vote by completing the bottom of the license application. In doing so, she checked a box indicating that she was a United States Citizen. McDonald testified that she checked the box "because at the time [she] wasn't sure if [she was] a citizen."[1] McDonald's husband testified that at that time, he too was "quite uncertain" about his wife's citizenship status. McDonald attributed part of her con-

---

[1] McDonald accurately indicated on the registration form that she was not eligible to vote in the Office of Hawaiian Affairs Election. The form asked if she considered herself "Hawaiian," defined as "any descendant of aboriginal people inhabiting the Hawaiian islands which exercised its sovereignty and subsisted in the Hawaiian Islands in 1778, and which peoples thereafter have continued to reside in Hawaii."

fusion to friends having told her that, having married a U.S. Citizen, she became one herself, automatically.

McDonald and her husband both testified that McDonald subsequently received a voter registration or voter inquiry postcard in the mail. Upon reviewing the form, Mr. McDonald testified that he counseled his wife, "I don't think you're a citizen, let's not take any chances. Check no [regarding U.S. citizenship] and send it back." McDonald did so.

When McDonald next received a Notice of Voter Registration and Address Confirmation in the mail, she believed that the government was allowing her to vote even though it had learned she was not a citizen. Her husband drew the same conclusion. The McDonalds were not dissuaded by a message on that Notice that stated "Attention Voter! . . . To be eligible to vote you *must* meet the following qualifications: Be a U.S. Citizen; Be a legal resident of the State of Hawaii; and Be at least 18 years of age." McDonald explained, "I just ignored [the Notice's warning] because I — I thought I can — I can vote because — since I put no in the [previous postcard's citizenship query]. I thought I can vote." She also testified that she misunderstood the three requirements, believing that meeting any one of the three was sufficient.[2]

McDonald then voted in the 1996 primary and general elections. She testified that she did so because she believed that it was her civic duty. At no point did McDonald inquire of anyone other than her husband whether she was a citizen, or whether she was allowed to vote. McDonald conceded she could have asked someone when she was registering to vote, but did not do so.

---

[2]Though the IJ did not believe this explanation, the IJ did not make an explicit adverse credibility determination. *Cf. Kalubi v. Ashcroft,* 364 F.3d 1134, 1137-38 (9th Cir. 2004) (testimony must be accepted as true in the absence of an explicit adverse credibility finding); *and Aguilera-Cota v. INS,* 914 F.2d 1375, 1383 (9th Cir. 1990) ("mere statement that a petitioner is 'not entirely credible' is not enough.").

In the process of applying for naturalization in 1997, McDonald volunteered to the agent interviewing her that she had voted in the last election. As a result of this information, the INS agent halted McDonald's naturalization proceedings. Despite Mr. McDonald's entreaties ("I said, 'Well sir, if she voted, it was — obviously it was a mistake. Can't you see that? Can't you understand that this was . . . ignorance on our part' "), the agent referred McDonald to a Special Agent in Investigations, who began removal proceedings. The Special Agent assigned to her case testified, "I think [McDonald] might have said that she made a mistake or she didn't know what she was doing, but to me [it] was an immaterial fact in my investigation." He determined McDonald had falsely claimed to be a citizen, voted, and "had the intent."[3] His interview with McDonald lasted about fifteen minutes.

A memo from the Office of Naturalizations Operations, available and extant at the time of McDonald's naturalization interview, required the Special Agent to conduct a more thorough investigation.[4] It instructs that in addition to asking a naturalization applicant whether she has ever voted in an election, "follow-up questions should be asked to determine whether the . . . voting was, in fact, a violation."[5] Current INS policy is reflected in an INS memo distributed subsequent to McDonald's interview; it states that "if . . . the election law penalizes the act of voting only upon an additional finding that the individual acted 'knowingly' or 'willfully,' adjudicating officers cannot conclude that an applicant voted unlaw-

---

[3]The government offered no proof that the Special Agent was a lawyer or had any specialized training to support this conclusion.

[4]Memorandum from Robert K. Bratt, Executive Director, Office of Naturalization Operations re: Voter Registration and Standardized Citizenship Testing 2 (May 13, 1997).

[5]*Id*. The INS is obligated to follow its own policy. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures"), *and Romeiro de Silva v. Smith*, 773 F.2d 1021, 1025 (9th Cir. 1985) (INS can be bound by its operations instructions).

fully until they assess the circumstances surrounding the voting, the applicant's credibility, and the documentary evidence."[6] The memo then lists five factors for the agent to weigh (among them "the extent of the applicant's knowledge of the election laws"), and counsels that even if the agent concludes that an applicant voted unlawfully, prosecutorial discretion might be warranted. Had these instructions been followed in McDonald's case, it is hard to imagine that McDonald would today be facing removal.

Nonetheless, in the hearing before the IJ, the INS asserted that McDonald had voted "in violation of any Federal, State, or local constitutional provision, statute, ordinance or regulation." *See* 8 U.S.C. § 1227(a)(6)(A). Specifically, McDonald was accused of committing voter fraud under Hawaii law, which states that "[a]ny person who knowingly votes when the person is not entitled to vote" is guilty of a felony. H.R.S. § 19-3.5(2). The IJ applied one of three definitions of "knowingly" available under Hawaii law — "when [a person] is aware that it is practically certain that his conduct will cause such a result." H.R.S. § 702- 206(2)(c).[7]

The INS Special Agent, McDonald, and her husband all

---

[6]*See* Memorandum from William R. Yates, Deputy Executive Associate Commissioner, Office of Field Operations, Immigrant Services Division, re: Procedures for Handling Naturalization Applications of Aliens Who Voted Unlawfully or Falsely Represented Themselves as U.S. Citizens by Voting or Registering to Vote (May 7, 2002).

[7]The full statute (based on Model Penal Code § 2.02(b)) defining "knowingly" has three alternative definitions. It states:

 (a) A person acts knowingly with respect to his conduct when he is aware that his conduct is of that nature.

 (b) A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist.

 (c) A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result. H.R.S. § 702-206(2).

testified. The IJ excluded an expert witness proposed by McDonald — a former Hawaii state prosecutor who would have testified regarding mens rea and his former office's methods for screening cases. At the conclusion of the hearing, the IJ found that there was substantial evidence that McDonald knowingly voted when she was not entitled to vote.[8] The IJ noted that McDonald had been able to read and understand the complex language relating to her eligibility to vote in the Office of Hawaiian Affairs Election, reasoning that it was difficult to see how she could have misread the voter warning on the Notice of Voter Registration card she received. Moreover, the IJ found that by asking no questions of election officials about her eligibility, McDonald made it "practically certain" that she would be able to vote despite not being a citizen. Concluding that a "reasonable person acting in good faith would have [so] inquired," the IJ found that McDonald met the requisite state of mind under Hawaii law. The IJ held that removability was established, and expressed sympathy that no waiver was available. The IJ then granted McDonald voluntary departure.

The Board of Immigration Appeals summarily affirmed the IJ's decision without opinion. McDonald petitions this court for review of the IJ's decision.

## DISCUSSION

The government must establish removability by "clear, unequivocal, and convincing evidence." *Woodby v. INS*, 385 U.S. 276, 286 (1966). McDonald argues that the government did not meet this burden. She contends that the relevant Hawaii statute requires a knowing and willful violation, which she did not commit. McDonald is correct.

---

[8]The IJ found that the INS had not established that McDonald violated any other provision of that statute, which includes knowingly registering to vote when not entitled to do so. *See* H.R.S. § 19-3.5(1).

**[1]** Hawaii law provides that a person commits a felony by "knowingly vot[ing] when the person is not entitled to vote." H.R.S. § 19-3.5(2). Here, the IJ interpreted the word "knowingly" as "when he is aware that it is practically certain that his conduct will cause such a result." *See* H.R.S. § 702-206(2)(c). This definition enabled the IJ to hold that McDonald violated the law: by not inquiring about her eligibility to vote, the IJ found, McDonald had made it "practically certain" that she would be able to vote. The IJ's analysis is critically flawed, however, because the IJ used the wrong definition of "knowingly."

**[2]** The IJ might have avoided the problem by allowing an expert witness proposed by McDonald. The witness, a former Hawaii state prosecutor, had handled hundreds of cases, both felony and misdemeanor prosecutions, and would have testified regarding mens rea and his former office's methods for screening cases. One can surmise that this would have included clarification of the word "knowingly" in the Hawaii statute, as well as his opinion on why the prosecutor's office had not prosecuted McDonald's case. As a general rule, an alien must be granted a reasonable opportunity to present evidence on her own behalf. 8 U.S.C. § 1229a(b)(4)(B). Specifically, the BIA has allowed similar evidence in the past. *See In Matter of Hoefflin*, 15 I&N Dec. 31 (BIA 1974) (letter opinion from state Attorney General advising INS to disregard decree of trial court considered as evidence). Particularly because the federal statute at issue (8 U.S.C. § 1227(a)(2)(6)(A)) required the IJ to perform the unusual function of interpreting state law, it was a mistake to exclude this witness.

**[3]** Under Hawaii law, the government must prove beyond a reasonable doubt each element of an offense, as well as the state of mind required to establish each element of the offense. H.R.S. § 701-114(1)(a) and (b). Hawaii law further provides that "when the definition of an offense specifies the state of mind sufficient for the commission of that offense, without distinguishing among the elements thereof, the speci-

fied state of mind shall apply to all elements of the offense." H.R.S. § 702-207. Those elements include the conduct, attendant circumstances, and results of conduct specified by the definition of the offense. H.R.S. § 702-205. This means that the government had to establish that both prongs of H.R.S. § 19-3.5(2) ("votes" and "when the person is not entitled to vote") were knowing. In addition, there are three different definitions of "knowingly" to choose from, depending on whether the word is modifying conduct, attendant circumstances, or a result of conduct. *See* H.R.S. § 702-206(2)(a)-(c).

In *State v. Keomany*, 34 P.3d 1039 (Haw. 2000), a sexual assault case, the Hawaii Supreme Court provided a checklist to analyze the elements of the crime and, for each element, articulated the category into which it fell: "Defendant (1) placed his hand (conduct) (2) on Complainant's breast (result of conduct) (3) by strong compulsion and therefore without her consent (attendant circumstance) and . . . (4) while not married to her (attendant circumstances)." *Id.* at 1047. Applying the same analytical process to the statute at issue here, "votes" is conduct, and "when the person is not entitled to vote" is an attendant circumstance of that conduct.

**[4]** The IJ erred by applying to both prongs of the voter fraud statute the definition of knowingly that applies to the result of someone's conduct, H.R.S. § 702-206(2)(c) — something not at issue here.[9] Instead, the IJ should have sought to determine whether McDonald's act of voting was knowing,

---

[9]That definition is applicable in cases like *State v. Batson*, 831 P.2d 924 (Haw. 1992). There, the court found that a father acted knowingly when he knew that it was practically certain that his conduct would result in his son's death, where the record reflected two months of physical abuse and severe beatings, manifest and deteriorating condition, and a conscious unwillingness to seek medical treatment. *Id.* at 933. The more expansive "practically certain" definition of "knowingly" is fitting when trying to demonstrate that someone knew of a result of his conduct; it is inappropriate here.

defined as "aware that [her] conduct is of that nature," per § 702-206(2)(a), and also whether McDonald knew that she was not entitled to vote, defined as "aware that such circumstances exist," per § 702-206(2)(b). While McDonald does not dispute having knowingly voted, she argues forcefully that she was not aware that the attendant circumstances — her ineligibility — existed. By applying the wrong definition of "knowingly," the IJ concluded that McDonald need not have been "aware" that she was ineligible to vote, but could simply have been "practically certain that she would be able to vote even though she was not a citizen." The IJ thus transformed a requirement of knowing conduct in a criminal statute into a civil standard akin to "knew or should have known."

Nor would McDonald's state of mind qualify as "reckless." Under Hawaii law, a person acts recklessly with regard to attendant circumstances when he or she "consciously disregards a substantial and unjustifiable risk that such circumstances exist." H.R.S. § 702-206(3)(b). One need not be "aware" of conduct and circumstances in order to be reckless, as is required to show knowledge. *See State v. Jenkins*, 997 P.2d 13, 36 n.21 (Haw. 2000). Thus, when a statute requires recklessness as an element of an offense, that element is also established if a person acts knowingly. However, the reverse is not true— recklessness cannot be transformed into knowingness. *See State v. Holbron*, 904 P.2d 912, 925 (Haw. 1995). The IJ here did not find that McDonald was aware of her ineligibility, nor that McDonald had consciously disregarded a substantial and unjustifiable risk that she was ineligible to vote.

The IJ found it significant that McDonald was able to read and respond appropriately to the question regarding her eligibility to vote in the Office of Hawaiian Affairs Election. However, it seems reasonable that a person can know that she is not an aboriginal Hawaiian and still have a mistaken impression about her citizenship status and the right to vote. The IJ found it difficult to see how McDonald could have

misread the voter warning on the Notice of Voter Registration, but it seems reasonable that McDonald concluded that she was allowed to vote because she received confirmation of her eligibility after having (she thought) informed the government that she was not a citizen. Mostly, the IJ seemed convinced of McDonald's violation because McDonald had the opportunity to ask poll workers if she was qualified to vote, and indeed that a "reasonable person acting in good faith" would have done so.

**[5]** Even taking as true all of the IJ's conclusions regarding McDonald's conduct, the mental state the IJ found might qualify as "should have known," or possibly as negligence,[10] but it is not knowingness. The IJ did not find that McDonald was aware that she was ineligible to vote, only that she should have made herself aware. This does not a violation make.

**[6]** Because McDonald did not have the requisite mens rea under H.R.S. § 19-3.5, she did not violate that law. Accordingly, the government did not establish by "clear, unequivocal, and convincing evidence" that she voted in violation of Hawaii state law under 8 U.S.C. § 1227(a)(6)(A). *See Woodby*, 385 U.S. at 286; *see also Lennon v. INS*, 527 F.2d 187, 193 (2d Cir. 1975) ("Deportation is not, of course, a penal sanction. But in severity it surpasses all but the most Draconian criminal penalties. We therefore cannot deem wholly irrelevant the long unbroken tradition of the criminal law that harsh sanctions should not be imposed where moral

---

[10]Under Hawaii law, a person acts negligently with respect to attendant circumstances when he should be aware of a substantial and unjustifiable risk that such circumstances exist. H.R.S. § 702-206(4)(b). Interestingly, the statute defines a risk as substantial and unjustifiable "if the person's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a law abiding person would observe in the same situation." H.R.S. § 702-206(4)(d). This sounds a great deal like the IJ's statement that a "reasonable person acting in good faith" would have asked poll workers about her eligibility to vote.

culpability is lacking."). The IJ's finding of removability, summarily affirmed by the BIA, was wrong.

## PETITION FOR REVIEW GRANTED.[11]

---

[11]We expect this holding will terminate removal proceedings against McDonald based on her 1996 voting activity. Shorn of the erroneous determination under 8 U.S.C. § 1227(a)(6)(A), McDonald's naturalization proceeding may now resume.