In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1594

ELIZABETH DAG UM KEATHLEY,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petition for Review of Orders of the
Board of Immigration Appeals

ARGUED OCTOBER 18, 2011—DECIDED AUGUST 22, 2012

Before EASTERBROOK, *Chief Judge*, and RIPPLE and
KANNE, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Elizabeth Keathley, a citizen
of the Philippines, married John Keathley, a citizen of the
United States, in 2003. The marriage was performed in
the Philippines. In 2004 the State Department issued a
nonimmigrant K-3 visa so that Elizabeth could live in
the United States while awaiting action on John's request
for her permanent residence as the immediate relative

of a U.S. citizen. After arriving in the United States, Elizabeth applied for and received a driver's license. The State of Illinois also sent her a voter registration card, and she voted in the November 2006 election.

Voting has come back to haunt her. Immigration officials working on John's request that his spouse receive permanent-residence status discovered that Elizabeth had voted. She has been ordered removed from the United States—and the administrative finding that she violated 18 U.S.C. §611 by voting in a federal election renders her inadmissible, and thus ineligible for any benefit as John's spouse. See 8 U.S.C. §1182(a)(10)(D)(i). An immigration judge ordered her removal, and the Board of Immigration Appeals affirmed.

Several of Keathley's arguments track those considered and rejected in *Kimani v. Holder*, No. 11-1497, which is being released contemporaneously. But there are two potentially important differences between the two cases. First, while Kimani falsely represented himself to be a U.S. citizen when registering to drive and vote, Keathley contends that she represented herself to be a citizen of the Philippines, presenting both her Philippine passport and her K-3 visa. Neither the IJ nor the BIA determined whether Keathley is telling the truth about this. (Kimani, by contrast, was in the United States unlawfully, having overstayed a visitor's visa, and did not want public officials to learn about his status as an alien.) Second, while Kimani checked a box on the driver's-license form claiming U.S. citizenship, Keathley contends that she left that box unchecked until the

state official who superintended the process—an official knowing that she is *not* a citizen—asked her if she would like to vote. Keathley says that she answered "yes". The box asserting U.S. citizenship ended up checked; Keathley says that she does not remember whether she checked the box or the state employee did so. The IJ and BIA did not decide how the box came to be checked (it is possible that the state official checked it after Keathley already had signed the form) or whether the state official understood that Keathley is not a citizen of the United States.

Keathley contends that, because the state official knew that she is an alien, the question about voting and the state's decision to send her a voter registration card led her to believe that voting would be lawful. She did not know about §611, and after she learned that aliens can't vote she asked the State of Illinois to revoke her registration (it did). Although by then she had voted, she contends that she did not violate §611 because the state officials' advice gave her a good defense of "entrapment by estoppel"—a misleadingly named doctrine that as we observed in *Kimani* should be called "official authorization" instead. That name would better fit the doctrine's actual nature and scope.

The immigration judge did not decide whether Keathley showed her passport and visa to the state official; whether that official raised the subject of voting knowing that Keathley is an alien; and whether that official checked the box claiming citizenship after Keathley signed the form. Although the IJ found her

generally credible, he did not make findings on these specific issues because he believed that entrapment by estoppel, as a doctrine of criminal law, is irrelevant in immigration proceedings. The BIA agreed with that conclusion. Both the IJ and the BIA erred.

It's true enough that "entrapment by estoppel" is the name of a defense to a criminal prosecution. But it does not follow that the defense is irrelevant in civil proceedings. Section 1182(a)(10)(D)(i) declares that an alien who has voted in violation of state or federal law is inadmissible. The IJ and Board therefore had to determine whether Keathley violated §611. And the only way to determine whether a person has violated a criminal statute is to examine both the elements of that law and all defenses properly raised. Suppose a statute declares that murder is a crime and defines murder as the intentional killing of a human being. A person who kills in self-defense, however, is not guilty of murder. A provision in the Immigration and Nationality Act withholding benefits from an alien who has "committed murder" requires the agency to decide, not only whether the alien killed someone, but also whether the killing was justified (and thus not "murder"). Just so with §1182(a)(10)(D)(i) and §611. If Keathley has a good defense, she has not violated §611 and remains eligible for adjustment of status.

Whether she has a good defense depends in part on facts that remain to be ascertained. Whether she has violated §611 also potentially depends on the rule that the defense of official authorization is available only if

the person giving authorization had authority to do so. See both *Kimani* and *United States v. Howell*, 37 F.3d 1197, 1205 (7th Cir. 1994). An agent of the Secret Service can authorize someone to pass counterfeit currency as part of an official investigation, but the principal of a high school can't authorize an alien to vote, no matter how emphatically the principal states his view that citizenship is irrelevant to voting.

Our opinion in *Kimani* observes that state motor-vehicle registrars lack authority to put aliens on the voting rolls. We did not mean, however, that motor-vehicle registrars lack *all* authority concerning voting. The motor-voter legislation authorizes officials in a department of motor vehicles to register people for federal elections. 42 U.S.C. §§ 1973gg–3(a)(1), 1973gg–6(a). The power to register someone supposes some authority to ascertain whether legal qualifications have been met, and officials are supposed to inform applicants about the eligibility rules for voting. 42 U.S.C. §1973gg(a)(5). These officials thus are entitled to speak for the government on that subject. What they say is not conclusive, but the official-authorization defense does not depend on the public official being *right* when giving approval. Our opinion in *Kimani* concerned someone who represented himself to be a citizen; but we must assume that Elizabeth Keathley represented herself to be an alien. That's why (she says) she thought the official's conduct implied (though wrongly) that aliens could vote.

The litigants have not explored the extent to which officials administering the motor-voter registra-

tion procedure are authorized to interpret the terms of that legislation and the requirements of valid registration, and to give binding advice to applicants. It may well be unnecessary to address that subject (which is relevant only if, on remand, the agency credits Keathley's statements about what occurred), and it would be imprudent to address potentially complex issues without briefs that explore them fully.

If the IJ *does* credit Keathley's statements about what occurred, the Department of Homeland Security should give serious consideration to withdrawing its proposal that she be declared inadmissible and be removed from the United States. A person who behaves with scrupulous honesty only to be misled by a state official should be as welcome in this country in 2012 as she was when she entered in 2004.

The petition for review is granted, and the matter is remanded for proceedings consistent with this opinion.