# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 11-1497 and 11-2955

ANTHONY M. KIMANI,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

---

Petitions for Review of Orders of the
Board of Immigration Appeals

---

ARGUED OCTOBER 5, 2011*—DECIDED AUGUST 22, 2012

---

Before EASTERBROOK, *Chief Judge*, and MANION and
ROVNER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Anthony Kimani, a citizen
of Kenya, entered the United States in 2000 on a visitor's
visa. When that visa expired, Kimani neither left nor

---

* Only No. 11-1497 was argued. No. 11-2955, which concerns
the denial of a motion to reopen, was submitted to the original
panel on January 12, 2012. See Operating Procedure 6(b).

sought permission to remain. Three years later he married a citizen of this nation. She applied for a visa on his behalf, and he filed a corresponding request for adjustment of status to that of lawful permanent resident. An investigation revealed that in 2003 Kimani had registered to vote. In order to do that he represented that he is a citizen of the United States. In November 2004 he voted in the general election. An alien who votes in an election violates 18 U.S.C. §611, and 8 U.S.C. §1182(a)(10)(D)(i) adds that "[a]ny alien who has voted in violation of any Federal, State, or local constitutional provision, statute, ordinance, or regulation is inadmissible." An inadmissible alien is ineligible for adjustment of status on the basis of a citizen spouse's petition. 8 U.S.C. §1255(a)(2). An immigration judge therefore denied Kimani's petition and ordered his removal from the United States; the Board of Immigration Appeals affirmed.

The parties have needlessly complicated these proceedings by debating whether the immigration judge should have waited (in other words, granted a continuance) while immigration officials decided whether a visa was available to Kimani. Statutory limits on the number of visas may delay their issuance even when an alien is substantively eligible. And there are potential jurisdictional obstacles to judicial review of an order denying a motion for a continuance. See 8 U.S.C. §1252(a)(2)(B)(i) and (ii), discussed in *Kucana v. Holder*, 130 S. Ct. 827 (2010), and *Calma v. Holder*, 663 F.3d 868 (7th Cir. 2011). When Kimani asked the immigration judge for a delay, he was unaware that his wife's petition

for a visa had been approved on February 2, 2009, the previous day. The briefs in this court, by both sides, likewise assume that Kimani is still waiting for a visa's availability.

Not until a few days before oral argument did counsel for the agency inform us that this shared belief is wrong. But it is also irrelevant. Kimani's problem is not that other people are ahead of him in a queue for visas; it is that he is ineligible for adjustment of status whether or not he has a visa. Only admissible aliens can have status adjusted to permanent residence on the basis of a spouse's application. The IJ and Board determined that Kimani is not "admissible" because he voted in violation of §611. Whether Kimani's challenge to that decision is sound presents a question of law, which we may address under 8 U.S.C. §1252(a)(2)(D), notwithstanding any language in §1252(a)(2)(B). There is no jurisdictional obstacle to review.

Kimani's assertion that he would not have withdrawn his request for voluntary departure if he had known about the visa's issuance also is irrelevant. Kimani wants to stay, not to leave quietly. He seeks adjustment of status to that of permanent residence. The only way to get that adjustment, following the adverse administrative decision, was to petition for judicial review. Such a petition automatically revokes an alien's entitlement to depart voluntarily. 8 C.F.R. §1240.26(i). See also *Alimi v. Ashcroft*, 391 F.3d 888 (7th Cir. 2004) (observing that voluntary departure reflects a promise to abandon legal remedies and leave, which is incompatible with

a demand that the judiciary nullify a removal order). Kimani has never suggested that he wanted to forego judicial review. Anyway, it isn't as if the agency hid the visa decision from him; it was no secret. An alien's lack of attention to the administrative process is not a reason to permit him to avoid the consequences of the choices he has made, such as the choice to abandon a request for voluntary departure and seek a judicial order that will entitle him to remain in this nation.

Thus we arrive at the merits. Kimani concedes that he voted in the 2004 general election. But he denies that doing so disqualifies him from adjustment of status. That's because §1182(a)(10)(D)(i) applies only to an alien who has voted "in violation of" a statute, and Kimani insists that he did not violate 18 U.S.C. §611—or at least that the agency did not *prove* that he violated §611. Section 611(a) declares that "[i]t shall be unlawful for any alien to vote in any election held solely or in part for the purpose of electing a candidate for the office of President, Vice President, Presidential elector, Member of the Senate, Member of the House of Representatives, Delegate from the District of Columbia, or Resident Commissioner". (An irrelevant exception to this rule is omitted.) The general election in fall 2004 was held, in part, to choose a President. Kimani concedes that he knew this (he voted for one of the candidate's electors). The IJ and BIA concluded that by conceding that (a) he is an alien, who (b) voted in a Presidential election, Kimani conceded violating §611(a) and established his ineligibility for the immigration benefit he needs.

As Kimani sees things, however, his concessions fell short of establishing a violation of §611(a). He contends that §611(a) requires proof that the alien knew that it was unlawful for him to vote. In other words, Kimani contends that §611 is a specific-intent statute, outside the maxim that ignorance of the law is no excuse, rather than a general-intent statute, which requires only proof that the defendant performed the acts that the law forbids, understanding what he was doing. Yet §611(a) does not contain the word "intentionally" or the slippery word "willfully," which sometimes requires proof of knowledge about the law's commands. Compare *Bates v. United States*, 522 U.S. 23 (1997), with *Cheek v. United States*, 498 U.S. 192 (1991). Nor does it require that any act be done "knowingly." A statute that does not mention any mental-state (*mens rea*) requirement is a general-intent law. See *Carter v. United States*, 530 U.S. 255, 269 (2000). No surprise, then, that the only appellate decision on the subject holds that a conviction under §611(a) does not depend on proof that the alien knew that voting is forbidden. *United States v. Knight*, 490 F.3d 1268 (11th Cir. 2007).

Kimani relies on *McDonald v. Gonzales*, 400 F.3d 684 (9th Cir. 2005), but that decision did not concern §611(a). It addressed the requirements of a state law. (Unlawfully voting in a state election makes an alien inadmissible, just as unlawfully voting in a federal election does.) The statute in *McDonald* is worded differently from §611(a). Whether *McDonald* is right or wrong—a subject on which we reserve decision—it does Kimani no good. *McDonald* understood the word "knowingly" in the

phrase "knowingly votes"—coupled with Hawaii's un-
usual rule that the appearance of that word anywhere in
a statute applies to all elements, see HRS §702–207—
to require proof of an alien's knowledge that voting is
forbidden. We're skeptical; "knowingly" usually means
with knowledge of the facts, not knowledge of the law.
See *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705,
2717–18 (2010); *Dixon v. United States*, 548 U.S. 1, 5 (2006).
But we need not pursue this subject; §611(a) lacks the
word "knowingly" or any analog to §702–207.

At oral argument Kimani's lawyer tried a variant
of the argument that the agency failed to establish the
required state of mind. He called it "entrapment by
estoppel." No such argument was made to the immigra-
tion judge or the Board, but we give Kimani the benefit
of the doubt by treating it as preserved because it is at
least loosely related to his argument that *scienter* is essen-
tial under §611(a). (Kimani made the argument to the
Board expressly in his motion to reopen, which we
address in the opinion's final paragraph.)

"Entrapment by estoppel" has little to do with the
affirmative defense of entrapment, under which a
person induced by public officials to commit a crime can
be convicted only if he was predisposed to commit that
offense independent of the inducement. See *Jacobson v.
United States*, 503 U.S. 540 (1992); *United States v. Pillado*,
656 F.3d 754, 762–68 (7th Cir. 2011). Kimani does not
contend that he is "an otherwise law-abiding citizen
who, if left to his own devices, likely would have never
run afoul of the law". *Jacobson*, 503 U.S. at 553–54. Nor

does he contend that he was induced to do something he preferred to avoid.

"Entrapment by estoppel" is poorly named; it is among the *justification* defenses, rather than, as with simple entrapment, a means to curtail official misconduct. When a public official directs a person to perform an act, with assurance that the act is lawful under the circumstances, the person does not act with the intent required for conviction. So if a Secret Service agent asks an informant to sell some counterfeit bills to a person suspected of running a counterfeit-passing ring, the informant's acts are justified, even though they otherwise could be described as the distribution of counterfeit currency. We have called this justification "entrapment by estoppel," see *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994), but the proposition is related to the rule that a person who asks the advice of counsel after providing complete disclosure, and then acts strictly in accord with the advice received, lacks the state of mind needed to support a conviction under many (though not all) criminal statutes, see *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008); *United States v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2008), rather than to classic "entrapment" doctrine. Perhaps entrapment by estoppel should be renamed the official authorization defense. For current purposes, however, the name does not matter.

Kimani relies on three decisions that, he contends, give "entrapment by estoppel" constitutional status: *Raley v. Ohio*, 360 U.S. 423 (1959); *Cox v. Louisiana*, 379 U.S. 559

(1965); and *United States v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655 (1973). Yet none of these cases has anything to do with that doctrine. They deal instead with the principle that criminal statutes and their implementing regulations may be enforced only if they give fair warning about what is forbidden. Kimani does not contend that §611 is vague, or that either judicial decisions or regulations (of which there are none) have obfuscated it. Compared with the honest-services version of mail fraud under 18 U.S.C. §1341 and §1346, which was sustained in *Skilling v. United States*, 130 S. Ct. 2896 (2010), §611 is a beacon of clarity.

To make out entrapment by estoppel, Kimani needed to show that he received official assurance that voting in 2004 was lawful. Yet he does not contend that any public official told him to vote in that election, let alone that it would be lawful for him to do so. His argument, rather, rests on the fact that, when he applied for a driver's license in 2003, the same form enabled him to register to vote. To do that, Kimani had to check two boxes: one representing that he is a citizen, another requesting voter registration. He checked both boxes. The form also required a signature verifying the truthfulness of all statements he made. He does not contend that any official told him that it is lawful for aliens to claim to be citizens, or that any public official directed him to register to vote.

What's more, the officials who handled the motor-voter process worked for the State of Illinois. State officials cannot direct or excuse a violation of federal law. *Howell*,

37 F.3d at 1205; *United States v. Baker*, 438 F.3d 749, 755–56 (7th Cir. 2006). The Supremacy Clause makes federal law binding on all state actors; no employee of Illinois can give anyone a justification for disobeying a federal statute. It takes actual authority for a public official to create a defense to a criminal prosecution. (The janitor of a public school can't authorize anyone to sell cocaine, for example.) Kimani does not argue that the state officials who registered him to vote had actual authority to permit him to vote. Nor does he contend that issuing a voter-registration card implies a grant of authority to vote independent of one's citizenship (as opposed to reflecting the representation, by Kimani to the officials, that he *is* a citizen). Thus even if registration to vote were the same as voting—it isn't, and §611(a) deals only with voting—nothing in the process by which Kimani became registered in 2003 excuses or justifies his unlawful vote in 2004. Because registering officials have some authority to interpret the laws they administer, it may matter that a person represents himself or herself as an alien; we discuss that subject in *Keathley v. Holder*, No. 11-1594, which is being released contemporaneously. But Kimani represented himself to be a citizen.

  Kimani's lawyer hinted that he may not have read the voter-registration form before checking the boxes and signing. Yet, as we explained in *Bayo v. Napolitano*, 593 F.3d 495, 502–05 (7th Cir. 2010) (en banc), people are bound by what they sign whether or not they read it. One exception, which was important in *Bayo*, concerns formal waivers written in a language the signatory does not understand. The representations on the registra-

tion form did not waive any rights—and Kimani has not argued that he is unable to read and write in English. Kimani's failure to read the registration form (if that is what happened) therefore is compatible with the Board's conclusion that he violated §611 by voting in the 2004 election.

No more is necessary to show that the petition for review of the removal order must be denied. Kimani asked the Board to reopen its decision. His ground was ineffective assistance of counsel; according to Kimani, his lawyer did not make a competent argument about the meaning of §611 and entrapment by estoppel. As we have just demonstrated, however, Kimani's problem stems from his own decision to register, to claim citizenship, and to vote. That can't be blamed on his immigration lawyer. The Board found that Kimani therefore could not show prejudice stemming from the way in which his lawyer handled the proceedings before the IJ and the BIA. We hold that the Board did not abuse its discretion in reaching this conclusion and denying the motion to reopen.

The petitions for review are denied.