In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 15-2204 & 16-1864

MARGARITA DEL PILAR FITZPATRICK,

*Petitioner*,

*v.*

JEFF SESSIONS, Attorney General of the United States,

*Respondent*.

———————

Petitions for Review of Orders of the
Board of Immigration Appeals.
No. A097 846 616

———————

ARGUED JANUARY 17, 2017 — DECIDED FEBRUARY 13, 2017

———————

Before EASTERBROOK, WILLIAMS, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Margarita Del Pilar Fitzpatrick, a citizen of Peru, had lived in the United States for three years when she applied for a driver's license in Illinois. She contends that when filling out the forms at the Department of Motor Vehicles she displayed her green card and her Peruvian passport—but she admits that she also checked a box claiming to be a citizen of the United States. The form sternly warns aliens not to check that box, and Fitzpatrick does not

contend that she has any difficulty understanding written English. (She came to the United States in 2002 to study English in college, and after earning a certificate as a medical translator she spent some time working as an interpreter before training as a nurse.) As required by the motor-voter law, 52 U.S.C. §§ 20503–06, the form also contained a checkbox that would lead to registration as a voter. Fitzpatrick maintains that the desk clerk asked whether she wanted to register, and when she inquired "Am I supposed to?" he replied: "It's up to you." She checked that box, was duly registered, and in 2006 twice voted in elections for federal officials.

Aliens are forbidden to vote in federal elections. 18 U.S.C. §611. Another statute, 8 U.S.C. §1227(a)(6), provides for the removal of aliens who vote in violation of either state or federal law. After discovering that Fitzpatrick had voted in a federal election, the Department of Homeland Security initiated removal proceedings. An Immigration Judge and then the Board of Immigration Appeals (initially and when denying reconsideration) decided that she must indeed leave the United States, even though she has led a productive and otherwise-unblemished life in this country, is married to a U.S. citizen, and has three U.S.-citizen children. Her children were born in Peru and naturalized after arrival. Her own 2007 application for citizenship is what brought her 2006 voting to light, when response to questions asked of all applicants she honestly described her voting history.

Fitzpatrick acknowledges that she voted in apparent violation of §611, which does not require proof that the alien knew that only citizens can vote in federal elections. See *Kimani v. Holder*, 695 F.3d 666 (7th Cir. 2012). Nonetheless, she contends, she did not actually violate §611, because she had

official approval to act as she did. Her lawyer calls this the "entrapment by estoppel" defense; we suggested in *Keathley v. Holder*, 696 F.3d 644 (7th Cir. 2012), that a better label would be "official authorization." But names don't matter.

The defense is available to someone who makes complete and accurate representations to a public official and then receives permission from that official, when acting within the scope of his or her authority. (We observed in *Keathley* that a high school principal can't permit aliens to vote, but that voting officials may have at least apparent authority to do so.) Fitzpatrick cannot make out either ingredient of this defense.

First, she did not make accurate disclosures when applying. She checked the box claiming U.S. citizenship. She is literate in English and has no excuse for making that misrepresentation. As we observed in *Kimani*, statements such as "I didn't read the form carefully" or "I didn't think this through before acting" or "I didn't understand the legal significance of what I was doing" may be explanations, but they are not excuses.

Second, no one told her that aliens are entitled to vote. Indeed, no one told her that aliens are entitled to register to vote. A clerk asked whether she wanted to register and added "It's up to you." That statement—apparently following a script that Illinois then required clerical officials to use—was a refusal to give advice, not an assurance that it was lawful to register. Federal law forbids state officials to say anything that will discourage an applicant for a driver's license from registering to vote. 52 U.S.C. §20506(a)(5)(C). This statute leads to unhelpful responses such as the one Fitzpatrick received. What happened to Fitzpatrick and other aliens such

as Keathley has led Illinois's Secretary of State to revise the department's Field Operations Manual to require clerks to remind applicants that citizenship is essential to voting, but the omission of that advice in 2005 still left Fitzpatrick with a noncommittal answer.

What's more, even if the clerk had assured Fitzpatrick (as he did not) that she was entitled to register, that assurance differs from authorization to vote. Because different units of government have different requirements for voting, it may be proper for aliens to register even though they must take care not to vote in elections for certain offices. Fitzpatrick had time after receiving her voter-registration card to determine which elections she could participate in. Even a cursory search would have turned up the rule against an alien's voting in a federal election—just as a cursory search would have revealed that a person registered in Illinois cannot vote for Governor of Indiana. Registration to vote simply does not imply authorization to vote in any election one chooses. Fitzpatrick is well educated and understands English; it is not too much to ask that she find out before voting whether an alien can cast a ballot in a federal election. States may deem it wise to inform all who register about the requirements for voting in particular elections, but failure to provide that advice does not amount to official authorization for aliens to vote in all elections.

The panel inquired at oral argument whether Fitzpatrick is the kind of person the Attorney General and the Department of Homeland Security want removed from the United States. The answer was yes—that consideration had been given to exercising prosecutorial discretion in Fitzpatrick's favor, but that the possibility had been resolved adversely to

her. That decision is entrusted to executive officials, leaving us no option other than to deny the petitions for review of the BIA's decisions.